## Mutual Supply Company Appeal.

Argued October 10, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

reargument refused January 22, 1951.

*William J. Kenney* and *Richardson Blair*, with them *Roy Thomas Clark, Harton S. Semple* and *Rose, Eichenauer, Stewart & Rose*, for appellants.

*Samuel A. Schreiner*, with him *Alexander B. Gilfillan*, for appellee.

*Samuel Krimsly*, for United Mine Workers of America, District No. 5, intervenors.

OPINION BY MR. JUSTICE JONES, January 2, 1951:

The appellant, Castle Shannon Coal Corporation, owns 161.58 acres of coal (with mining rights thereto) made up of scattered blocks underlying approximately 450 acres of surface land in Upper St. Clair Township, Allegheny County. This coal acreage represents what remains unworked of 1578 acres of coal in Upper St. Clair and Bethel Townships which the Castle Shannon company purchased from Pittsburgh Coal Company in 1941. By its deed for the coal property, Castle Shannon possesses contractual rights to make an entry to the coal through the David H. Andrews surface tract for the purpose of mining and removing the coal. To that end, Mutual Supply Company, a subsidiary of Castle Shannon, purchased 14.43 acres of surface land

of the Andrews tract; and, together, Mutual and Castle Shannon applied to the authorities of Upper St. Clair Township for a building permit authorizing the construction of a tipple and accessory buildings, according to submitted plan, on Mutual's property "to be used for the servicing of coal mining operations to be conducted by use of the Slope shown on said Plan and for the sale at retail of the coal brought to the surface through said Slope." In short, the applicants proposed to open up a coal mining operation on Mutual's surface property and, from there, to load, transport and deliver to retail customers coal of Castle Shannon brought to the surface through the mining operation.

Upper St. Clair township has a zoning ordinance which was duly enacted in 1947 and according to which, with its amendments, the area within which Mutual's surface land is located is exclusively zoned for single-family-dwelling use. The granting of a permit for the use of Mutual's property, as proposed by the applicants, would obviously have required a variance from the restriction of the zoning ordinance. After a hearing, the Township's Board of Adjustment refused the applicants the permit applied for and gave four reasons, with specification, for so doing. The applicants thereupon appealed the Board's action to the court below which, after a full hearing, dismissed the appeal and affirmed the order of the Board of Adjustment. The instant appeals therefrom by Mutual Supply Company and Castle Shannon Coal Corporation to this court followed. The basic legal question is whether the Board of Adjustment was guilty of a manifest and flagrant abuse of discretion in refusing the permit which the appellants requested. See *Reininger Zoning Case*, 362 Pa. 116, 117, 66 A. 2d 225.

The appellants assert that their minable coal and practicable access thereto lie solely within the Township and that forbidding them the right to mine their

coal through Mutual's surface land deprives them of property without due process of law in violation of both the Federal and State Constitutions. If the appellants' major premise were well-founded, the question which they raise would indeed be a very serious one. But, the fallacy of the contention is that the facts which it assumes are not borne out by the record and are contrary to the supportable findings. Thus, the learned court below found "that mining operations have long been conducted in the tracts owned by [Castle Shannon], the coal being removed and treated through mining structures at Coverdale [in an adjoining township], several miles distant from the location desired . . . ." The undisputed evidence shows that from 1941, when the appellant, Castle Shannon Coal Corporation, acquired the coal lands in Upper St. Clair Township, until 1947, when the Township originally enacted its comprehensive zoning ordinance, the Castle Shannon company mined and removed coal from its Upper St. Clair Township holdings through an entry, shaft and tipple at Coverdale and continued so to do until June 1949 when the company voluntarily abandoned its operations there because of existing water conditions and the increasing distance of the remaining coal-in-place from the tipple, which entailed higher operating costs. As the appellants' History of the Case relates,—"From December 31, 1946 until June, 1949, the sole mining done by Appellant [Castle Shannon] was beneath Upper St. Clair Township as its other coal had been worked out." And, at no time, was the mining and removal of such coal from beneath the surface of Upper St. Clair Township a subject of complaint or objection by the Township or its officials.

The court below further pertinently observed that "It does not appear that [the coal] cannot be removed elsewhere." Wholly apart from the Coverdale entry, the evidence discloses that the coal could be taken out

through workings of the Pittsburgh Coal Company (Castle Shannon's predecessor in title) and that there are still other entries to the coal as well as a number of other possible openings to it. The conclusion necessarily follows, therefore, that the surface of Mutual's land in Upper St. Clair Township does not afford the only way for the mining and removal of the coal underlying the property. On the basis of the record in this case, as above indicated, the error of the appellants' contention, that the Board of Adjustment's refusal of the permit requested deprives them of any use of their estate in the coal, is manifest.

True enough, the coal could be removed much more economically and conveniently through use of the structures which the appellants propose to create or erect in Upper St. Clair Township, but "the proposal is merely for the pecuniary advantage of the petitioner [appellants]" as the court below competently found. Mere added advantage or financial benefit to an applicant for a variance of a zoning ordinance does not warrant judicial interference with the administrative board's exercise of its discretion in applying the zoning ordinance according to its terms. In *Fleming v. Prospect Park Board of Adjustment,* 318 Pa. 582, 584, 178 A. 813, it was said that "The only reason for authorizing a departure in this instance appears to be the added advantage and financial benefit to appellant, through increase in the rental value of her apartments. This is not sufficient to warrant interference by us in a matter which was, in any event, primarily one of discretion with the board of adjustment. 'Where an official body, in its administrative capacity, has acted upon a matter properly before it, the courts should not reverse, except where there is a manifest and flagrant abuse of discretion': Valicenti's App., 298 Pa. 276, 281." See also *Jennings' Appeal,* 330 Pa. 154, 157-158, 198 A. 621.

It is true, as the appellants assert, that the area in which Mutual's property is located was reclassified for single-family-dwelling use while the application for the permit was pending. But, that affords the appellants no ground for complaint. The Board disposed of the application according to the law in effect at the time of its action with respect thereto; and that is sufficient. In *A. N. "Ab" Young Company Zoning Case,* 360 Pa. 429, 431, 61 A. 2d 839, it was recognized that "a mere application for a permit confers no *vested right* as of that time, and an application may be refused or permit vacated because of an ordinance passed after the date of the application" where no improvements have been made or any money expended in connection therewith.

Even without the late reclassification, whereof the appellants complain, the granting of the permit would have necessitated a variance at any time. Under the zoning ordinance, the property within the Township was originally districted with respect to permissible uses into three zones designated District U-1, District U-2 and District U-3. District U-1 was restricted to single-family dwellings; District U-2 to multiple-family dwellings; and District U-3 to commercial uses. The property which Mutual has since acquired was included in District U-1. But, by amending ordinance enacted October 6, 1949, a designated area for a certain distance along both sides of McLaughlin Run Road which had been included in District U-1 was transferred to District U-3 "for the purpose of transferring the property [so] described from the Single Family Dwelling District . . . to the Commercial District . . . ." Among the properties thus affected was the property here in question which the appellant, Mutual Supply Company, purchased four days after the amendment, to wit, on October 10, 1949; and on November 8, 1949, Mutual filed its application for a permit allowing it to erect

on its ground the proposed tipple and other buildings. On November 16, 1949, Castle Shannon formally joined in the application for permit. Two days later (November 18th) the application was refused by the Township Secretary. The applicants promptly exercised their right of appeal to the Board of Adjustment. On December 14, 1949, the second amending ordinance was introduced, designed to reclassify certain properties (including Mutual's) from District U-3 to District U-1. The Board of Adjustment held a hearing on the applicants' appeals from the refusal of the permit on December 16, 1949. On January 12, 1950, the proposed amending ordinance was enacted; and on January 13, 1950, the Board of Adjustment rendered its decision refusing the permit.

It is clear that at no time was the property, whereof Mutual ultimately became the purchaser, zoned more liberally than for commercial use. Even on that basis, the granting of the requested permit would have required a variance. The use to which the applicants proposed to put Mutual's property was industrial. The fact that coal would be sold from there would not change the character of the *substantial* use. That brings us to the appellants' contention that the zoning ordinance is invalid because it makes no provision for industrial use of property within the Township. But, that circumstance does not, *ipso facto,* constitute a legal defect. See *Duffcon Concrete Products Inc. v. Borough of Cresskill,* 1 N.J. 509, 64 A. 2d 347 (1949). The exclusion of industrial use involves an exercise of legislative discretion under the existing facts and circumstances. In the present instance, there was evidence that "the highest and best use of the area is residential." Within a half-mile radius of Mutual's surface plot there are not less than forty residences of an average value of $30,000 each. Of course, if the ordinance's exclusion of industrial use would conclusively prevent

the appellants from mining and removing their coal for which they have full mining rights without liability for surface support, then a different question would be presented. "For practical purposes, the right to coal consists in the right to mine it": *Commonwealth ex rel. v. Clearview Coal Co.*, 256 Pa. 328, 331, 100 A. 820. But, as the findings of the learned court below plainly indicate, the appellants here are not being completely deprived of their right to mine and remove their coal.

There is no merit in the appellants' contention that the ordinance arbitrarily discriminates against mining and removal of coal through the surface of the Township.

Order affirmed at appellants' costs.