## Logan v. Bickel

*Robert A. Wright,* for plaintiff.
*Ralph L. Lindenmuth,* for defendant.

DIGGINS, J., June 22, 1956.— . . . Plaintiff herein is the owner of a tract of land consisting of approximately six acres of ground in the Borough of Yeadon known as the "Barnes Tract" which tract it proposes to subdivide into 20 building lots and upon which it proposes to erect 20 dwelling houses. However, on July 14, 1955, plaintiff owned only one of the lots presently in question and at that time applied for a building

permit to erect a house on this particular lot, being lot no. 1.

Later it submitted a plan of development of the 20 lots and on July 29, 1955, plaintiff wrote a letter to the building committee of the Borough of Yeadon, stating that it held title to lot no. 1 only and that the improvements shown on the remaining ground are not to be affected by this lot, and further stating that it was plaintiff's desire to complete a sample house on lot no. 1 prior to final settlement for the balance of the tract, and asking the building committee to expedite the issuance of a permit in accordance with an application dated July 14, 1955, and on August 1, 1955, the plan was stamped "Approved" and signed by Frank R. Bickel, the building inspector, but with the notation "Permit No. 1989, No. 1 lot", and thereafter on August 6, 1955, building permit no. 1989 was issued to plaintiff granting permission to "erect one single house in accordance with plans and letter submitted." This house has been built and from the picture admitted in evidence is an attractive one.

The record shows that plaintiff, even before the permit for the one house was issued, made certain commitments for other houses which it planned to erect on the tract, such as contracts for papering, painting, plumbing, plastering, insulation, electrical work and landscaping for all proposed 20 houses, and in October, having secured the permit for only one house, plaintiff entered into six contracts with prospective buyers to erect and sell homes on lots 2 to 7, inclusive, and plaintiff made commitments for mortgage loans on homes to be erected on lots nos. 1 to 5 and also lots nos. 7 and 8.

Meanwhile, plaintiff had been unofficially discussing the proposed approval of the over-all plan with Messrs. Leonard and Elliott, members of council of the Borough of Yeadon, and contends that it had the unofficial ap-

proval of these two gentlemen. However, on October 5, 1955, plaintiff was notified that the Borough of Yeadon contemplated the creation of a light industrial district and the reclassification of two areas of the Borough of Yeadon, one of which included the tract in question, from residential to light industrial use only. Admittedly several hearings were held after proper advertisement and some 700 to 900 residents and taxpayers appeared and thereafter on November 23, 1955, the proposed amending ordinance was adopted and a light industrial classification was created, including, among others, the tract in question, and the amendment so adopted also provided specifically that no residential use should be permitted in the area.

Between October 5th, when plaintiff was notified of the contemplated change, and the opening of the hearings on October 17th, plaintiff did on the day of the first hearing, to wit, October 17, 1955, apply to the building inspector for 19 permits to erect 19 houses on 19 lots into which it proposed to subdivide the remainder of the tract, and the building inspector refused to issue the permits, asserting that the subdivision plan had not been approved by the borough and also because the tract of ground was then under consideration for rezoning, and thereafter, to wit, on October 26, 1955, the present complaint in mandamus was filed by plaintiff.

The issue here raised is whether or not this record shows anything binding the Borough of Yeadon upon which plaintiff can rely in order to secure a permit for the additional 19 homes and also whether or not a borough may establish an industrial district and prohibit therein the erection of residences.

It is clear from the evidence that the most plaintiff herein had was a permit for the erection of one house which was presented to the building inspector as part

of a proposed total development of 20 houses, and unofficial indication from two members of borough council that the plan in substance would be approved. These facts alone, in our opinion, would not bind the borough nor would they warrant plaintiff in making expenditures or commitments relying on subsequent approval. It is to be noted that the building inspector, in granting the permit for the erection of the residence on lot no. 1, carefully noted on the plan that this approval applied only to the proposed construction on lot no. 1 and the building permit which was issued was specifically restricted to lot no. 1.

The law is well settled in Pennsylvania that a municipality may properly refuse a building permit for a land use repugnant to a pending and later-enacted zoning ordinance even though application for the permit is made when the intended use conforms to existing regulations, provided that no permit has been issued and relied on in good faith to the substantial detriment of the holder of the permit: Aberman, Inc., v. New Kensington, 377 Pa. 520. See also, Gold v. Building Committee of Warren Borough, 334 Pa. 10, 5 A. 2d 367; A. N. "Ab" Young Zoning Case, 360 Pa. 429, 61 A. 2d 839; Mutual Supply Company Appeal, 366 Pa. 424, 77 A. 2d 612.

Here it is apparent that no permit was issued much less relied on for the subsequent proposed 19 houses. Plaintiff relies on the case of Shapiro v. Zoning Board of Adjustment, also in 377 Pa. 621, but this case is readily distinguished from the present case. These two cases were before the Supreme Court at the same time, the Aberman case, supra, was decided on June 1, 1954, and the Shapiro case, supra, was decided June 4, 1954, opinions in both cases by Mr. Justice Jones, and in the Shapiro case, it was held that an amendatory ordinance which was enacted subsequent to the issuance of a use permit for the land and which was specifically designed

to prevent the property owner from making a previously permitted use of the land, was special legislation as to him and could not destroy his right to use the land for the previously permitted use, and the Shapiro case, supra, further held that a property owner has a legal right to obtain a permit for the use of land which is a permissive use under the plain words of the zoning ordinance when given their plain and ordinary meaning which the court is required to do. In that case, the ordinance provided that uses permitted in an "A" commercial district as described by the zoning ordinance specifically included those "uses permitted in any residential district" and among the uses permitted in a "D" residential district as set forth in the ordinance were "athletic or amusement parks which shall not be changed to other uses that are not in conformity with the district regulations." Plaintiff therein was seeking to erect and operate a kiddie amusement park on the land.

In the present case, no permits were issued before the amendatory ordinance and the amendatory ordinance specifically prohibits the erection of residential properties in the industrial area. This brings us then to the question of the legal status of a zoning ordinance which establishes industrial areas and prohibits therefrom residential buildings.

Counsel for both parties have failed to call our attention to any case or statute on this question and we have been unable to find any authority on the question in Pennsylvania, but Charles and Arden Rathkopf in their work, The Law of Zoning and Planning, (3rd Ed.), vol. 1, p. 207, treat with the question and point out that zoning in the following municipalities excludes residences from industrial districts: Altoona, Pa., Chicago, Ill., Cleveland, O., DesMoines, Ia., Detroit, Mich., Kansas City, Kan., Los Angeles, Calif., Madison, Wis., Milwaukee, Wis., Newark, N. J., Oklahoma City, Okla.,

Philadelphia, Pa., Phoenix, Ariz., Pittsburgh, Pa., Richmond, Va., Seattle, Wash., and sound reasoning would indicate that such a prohibition is not only reasonable but necessary.

Industrial sites, while providing room for the most important source of income for our citizens, are usually the less favored in zoning laws, and if in those areas where industry is permitted to locate, other types of construction are permitted to encroach, industrial expansion would be stifled. Further, it is well recognized that certain areas are best suited for industry and if a municipality, having determined the total area required for industry within the community, can have its over-all plan defeated by the encroachment thereon of nonindustrial use, a proper governmental function might be destroyed and there would be no place for industry to go, while nonindustrial uses might have several choices.

Modern thinking in municipal governing bodies has changed and developed in recent years and now many communities which previously permitted no industry, let alone wanted it, have changed their views and are courting the less obnoxious industries, and the present ordinance does exactly that specifically, where they can set aside a specific area for that purpose and still obtain a substantial tax and payroll source without burdening the school system and the various other municipal services.

This right, we think, should belong to the municipality in the interest of the general public economic welfare, and we therefore make the following

### Conclusions of Law

1. That it is incumbent upon one proposing to divide a plot of ground into lots fronting on a proposed street, to be newly created and not already a part of the borough plan of streets, to first obtain the approval of borough with respect to such proposed street or

streets, and all other related municipal improvements, such as curbs, sidewalks, sanitary and storm water sewer installations and drainage ditches.

2. The borough council is not bound by conversations or any acts performed by its individual members unless authority so to do has been delegated by council by appropriate councilmanic action.

3. That a builder who commits himself to the construction of houses or enters into an agreement for their sale without having such prior approval from the borough with respect to the subdivision plan and all municipal improvements to be installed and constructed therein and thereon, does so at his peril.

4. A municipality may properly refuse a building permit for a land use repugnant to a pending and later enacted zoning ordinance even though application for the permit is made when the intended use conforms to existing regulations, provided that no permit has been issued and relied on in good faith to the substantial detriment of the holder of the permit.

5. That the building inspector of the borough of Yeadon acted legally and with propriety in refusing plaintiff's application for 19 building permits for the erection of 19 houses on 19 lots, into which plaintiff proposed to subdivide the Barnes Tract, when in fact, he knew that borough council had not yet approved the subdivision plan and was considering the adoption of an ordinance amending the Yeadon Borough Zoning Ordinance so as to reclassify the area from a residential district to a light industrial district in which residences were not to be permitted.

6. That where the land rezoned from residential to light industrial use is bounded on the north by industrial plants and a railroad, on the west by the borough dump, on the south by greenhouses and on the east by residences, it is reasonable to reclassify such land for light industrial purposes and such action should not be disturbed by the court.

7. That it is reasonable to prohibit residential development within an industrial zone since a natural and recognizable conflict exists between industrial and residential use.

8. That unless borough council acts capriciously, unreasonably and arbitrarily, its action in adopting an amendment to the zoning ordinance so as to reclassify certain portions of the borough into a light industrial district should not be invalidated.

9. That the complaint in mandamus should be dismissed at the cost of plaintiff.

Therefore, we make the following

### Decree Nisi

And now, to wit, this June 22, 1956, at 9 a.m., it is ordered, adjudged and decreed that the complaint in mandamus in the above entitled matter be and the same is hereby dismissed.

Plaintiff to pay the costs.