G.M.P. Land Company, Inc., Appellant *v.* Board of Supervisors of Hegins Township and Hegins Township Environmental Association, Appellees.

Argued February 1, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

*Richard L. Caplan,* with him *David S. Gellert, Frumkin & Manta, P.C.,* for appellant.

*Leroy G. Adams, Lipkin, Marshall, Bohorad & Adams, P.C.,* for appellee, Board of Supervisors of Hegins Township.

*John T. Pfeiffer, III, Pfeiffer, Brown & Baldwin,* for appellee, Hegins Township Environmental Association.

OPINION BY JUDGE CRAIG, March 14, 1983:

In this zoning case, G.M.P. Land Company, Inc. appeals from a Schuylkill County Common Pleas Court order, which affirmed a Hegins Township Board of Supervisors' decision rejecting a curative amendment petition that would have enabled GMP to strip-mine approximately 1,000 acres of land in the township's S-1 Special Purpose Wooded Area, where mining is not a permitted use. We affirm.

On August 10, 1966, Hegins Township enacted a zoning ordinance based on a comprehensive plan de-

veloped by its planning consultant and adopted by the township in June of 1965. In addition to establishing the S-1 Special Purpose Wooded Area and other district classifications within the township, the ordinance describes an S-3 Special Purpose Mining Area.

That S-3 district extends southward from the crest of the Broad, Bear, and Goodspring Mountains to the southern line of the township. There, one may engage in underground and strip mining operations as a special use so long as (1) the underground operations do not "result in subsidence or other surface movement which will adversely affect life and property or jeopardize the public safety and welfare,"[1] and (2) the strip mining operations, considered a "temporary use,"[2] conform to restrictions set forth in sections 6.301-6.303[3] and 7.403[4] of the ordinance.

The S-1 district, the one where mining is not permitted, extends northward from the crest of the three mountains to Pine Creek; as found by the supervisors and as summarized by the common pleas court, the Hegins Township Authority water reservoir, the Authority's deep wells, Pine Creek, and the Mauch Chunk

[1] Section 4.202 of the Hegins Township Zoning Ordinance.

[2] Section 6.301 of the zoning ordinance.

[3] Section 6.301 permits strip mining and excavation operations for limited periods of time as a special use in the S-3 district, subject to appropriate conditions and safeguards.

Section 6.302 describes backfilling, fencing, operating schedule, drainage, and slope restrictions.

Section 6.303 requires that all applications for strip mining or excavation operations comply with the ordinance's special use and application procedure requirements.

[4] Section 7.403 provides, in pertinent part:

*Zoning permits for strip mining or excavation operations.* The board may authorize the Zoning Inspector to issue a Zoning Permit for a strip mining or excavation operation covering an area not to exceed four (4) acres. Such a permit shall be valid for a period not to exceed six (6) months, unless reviewed by the Board.

acquifer formation, which stores and supplies water to these facilities, all lie directly downhill from, or adjacent to, the S-1 district.

Uses permitted in the S-1 district include the production of agricultural, nursery, and and forest products, golf courses and swimming pools, low intensity park and recreation areas, landscaped areas, and radio transmission or receiving towers or facilities, as well as customary accessory uses and essential services, and appropriate public uses.[5]

The land which is the subject of this appeal—called the "yellow area"[6]—borders the S-3 district, stretching for approximately 1000 acres in the S-1 district along the northern slope of the Broad, Bear and Goodspring Mountains; it contains 367 acres assessed as coal or coal reserve.

GMP purchased the yellow area, as well as other property in the S-1 and S-3 districts, on March 28, 1975, eight years after the township enacted its zoning ordinance; the company has been strip- and deep-mining its extensive land holdings in the S-3 area ever since that acquisition.

GMP filed its curative amendment petition under section 1004 of the Pennsylvania Municipalities Planning Code (MPC)[7] after failing to obtain a variance.[8]

---

[5] *See* section 4.201 of the ordinance concerning use classes 5, 6 and 10.

[6] The parties refer to the affected land as the "yellow area" because counsel for GMP used a yellow marker to designate the relevant boundaries in exhibits for the hearing.

[7] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §11004.

[8] The land in question has been the subject of similar litigation in the last ten years. In 1974, GMP's predecessor in title applied for a variance to accomplish virtually the same thing now requested in GMP's petition for a curative amendment. The township's zoning hearing board denied that variance request on February 28, 1974. GMP filed a variance application in December of 1976; the zoning hearing board denied that application on March 25, 1975.

After four days of hearings, the supervisors entered an order denying GMP's petition and filed 129 findings of fact based on the testimony heard and evidence introduced at the hearings.

Taking no additional testimony, the court of common pleas affirmed.[9]

As well summarized by Common Pleas Court Judge LAVELLE, GMP contends:

(1) that the ordinance does not permit mining anywhere in the township and is therefore facially unconstitutional;

(2) that the ordinance prohibits mining where there are substantial mineral deposits and restricts the landowner to passive open space uses, which constitutes a taking of private property without just compensation;

(3) that because the ordinance excludes mining in the S-1 district, it is unrelated to the legitimate police powers of the township;

(4) that GMP's mining and reclamation plan will prevent damage to the township reservoir and water supply and that therefore, there will be no harm to the public welfare; and

(5) that because the ordinance and comprehensive plan have not been updated, the ordinance is invalid because it ignores changed conditions since 1966.

---

[9] Where, as here, the common pleas court took no additional evidence, we will limit our scope of review to a determination of whether the governing body abused its discretion or committed an error of law. *Appeal of Thiokol Corp.*, 66 Pa. Commonwealth Ct. 26, 443 A.2d 1332 (1982).

596

Apparently because the ordinance here vests the zoning board with discretion to authorize[10] and police[11] strip mining activities in the S-3 district, GMP views the ordinance as unconstitutional on its face, equating the township's imposition of restrictions upon mining activities with the use-by-variance scheme condemned in *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970), and the tokenism scheme condemned in *Township of Williston v. Chesterdale Farms, Inc.,* 462 Pa. 445, 341 A.2d 466 (1975). We find GMP's reliance upon *Girsh* and *Williston* to be misplaced.

In *Girsh,* of course, our Supreme Court prohibited a township from totally excluding multifamily dwellings by zoning ordinance, while, in *Williston,* it held equally unconstitutional an ordinance setting aside a token amount of land for multifamily dwellings.

Here, the Hegins Township Zoning Ordinance does not exclude mining from the entire township, notwith-

---

[10] Section 4.202 provides that special uses "may be permitted only upon authorization by the Board of Adjustment, subject to certain conditions and safeguards, as provided in this Section and after review by the Planning Commission."

[11] Section 4.202 also provides:

*Use Class 9 Mining Excavations.* Underground mining, strip mining, and all other excavation operations may be permitted as a Special Use by the Board of Adjustment only in the S-2 [sic] District. All such mining and excavation operations shall conform to the laws of the Commonwealth of Pennsylvania.

The Board of Adjustment shall review the nature and extent of all underground mining operations and may require adequate assurances that such mining operations will not result in a subsidence or other surface movement which will adversely affect life and property or jeopardize the public safety and welfare.

All strip mining and other excavation operations shall conform to the restrictions set forth in Section 6.302 of this Ordinance.

standing GMP's contention to the contrary. Rather, it merely provides that, in addition to the general health and safety requirements established for all eleven classifications in the township,[12] strip mining and excavation operators comply with conditions and safeguards designed to minimize the potentially adverse effects associated with mining activity.[13]

Given the presumption of constitutionality that attaches to a zoning ordinance, *Snyder v. Railroad Borough*, 59 Pa. Commonwealth Ct. 385, 430 A.2d 339 (1981), the heavy burden on a landowner to prove the facial invalidity of an ordinance, *Id.*, and the fact that to avoid being exclusionary, an ordinance need not allow a use absolutely, as a permitted use, but may allow it conditionally, by way of special exception, *Zajac v. Zoning Hearing Board of Mifflin Township*, 41 Pa. Commonwealth Ct. 7, 398 A.2d 244 (1979), we must agree with the common pleas court that GMP failed to meet its burden.[14]

### Unconstitutional Taking

GMP also contends that it has no access to the coal deposits in the yellow area and that, as a result, the supervisors' refusal to rezone the affected property for strip mining constitutes an unconstitutional taking of the company's property without just compensation. We disagree.

---

[12] *See* section 4.200 of the ordinance.

[13] *See* footnote 11.

[14] The partial exclusion of mining within the township does not amount to mere tokenism, *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 194, 382 A.2d 105, 111 (1977) (where amount of land zoned as being available for particular use is disproportionately small, ordinance will be held exclusionary) ; as noted by the common pleas court, after enactment of the zoning ordinance, the S-3 Special Purpose Mining District embraced approximately 14% of township lands. Moreover, Finding of Fact No. 102 states that the coal reserves in the S-3 district are in no danger of exhaustion and notes that GMP is, in fact, mining there.

"If the *effect* of the zoning law or regulation is to deprive a property owner of the lawful use of his property, it amounts to a 'taking,' for which he must be justly compensated." *Cleaver v. Board of Adjustment,* 414 Pa. 367, 372, 200 A.2d 408, 412 (1964) (emphasis in original). However, because all zoning involves a taking in the sense that the owner is not completely free to use his property as he chooses, such a taking does not entitle the owner to relief, unless the ordinance unreasonably restricts his rights. *Miller & Son Paving v. Wrightstown Township,*    Pa.    , , 451 A.2d 1002, 1006 (1982) ; *see also Snyder* at 395, 430 A.2d at 345 (property taken when rendered valueless or no longer useful in reasonable manner). Restrictions are not *per se* unreasonable simply because they limit the extraction of minerals. *Miller* at    , 451 A.2d at 1006.

Yet, as we noted in *Township of Paradise v. Mt. Airy Lodge, Inc.,* 68 Pa. Commonwealth Ct. 548, 554, 449 A.2d 849, 852 n. 7 (1982), in Pennsylvania, the zoning of mining operations assumes added significance because Commonwealth law recognizes coal, surface, and the right to support as three separate estates in land, each capable of being vested in different persons at the same time. *Commonwealth v. Fitzmartin,* 376 Pa. 390, 102 A.2d 893 (1954); *Smith v. Glenn Alden Coal Co.,* 347 Pa. 290, 32 A.2d 227 (1943).

Thus, as our Supreme Court implicitly recognized in *Mutual Supply Co. Appeal,* 366 Pa. 424, 430-31, 77 A.2d 612, 615 (1951), an ordinance's exclusion of mining on the surface can amount to a taking of the coal estate below if that ordinance "conclusively prevents" an owner from gaining access to his subsurface property.

Therefore, to determine if the township's zoning ordinance here is confiscatory, we must examine if its prohibition against mining in the S-1 district unrea-

sonably restricts GMP's access to the company's coal estate below. As to GMP's subsurface rights, it is of no moment that the company, as owner of all three estates in land, can use the surface of the yellow area for a variety of permitted non-coal mining related activities, if it has no access to the separate estate in coal below. *Cf. Mutual Supply Co. Appeal,* 366 Pa. 424, 77 A.2d 612 (zoning ordinance's exclusion of industrial use on surface estate did not conclusively prevent company from mining and removing its coal so long as access to coal available through other, though more expensive, means).[15]

Here, substantial evidence of record supports the supervisors' conclusion that GMP can mine coal from its subsurface estate in the yellow area by deep mine procedures originating in the adjacent S-3 district. Indeed, despite GMP's contention that deep-mining under the yellow area would be unrealistic, as well as physically and economically impossible, the supervisors received in evidence a 1979 lease which obligated the company to deep-mine coal in veins extending into the yellow area from an opening located in the S-3 district along the south side of the three mountains; the lease stated that the area leased contained 30 million tons of economically recoverable or marketable anthracite coal. Because resolutions of credibility and conflicting testimony are for the governing body

---

[15] In *Mutual Supply,* the Supreme Court stated that a zoning ordinance's failure to provide for the industrial use of property within a township does not *ipso facto* constitute a legal defect. 366 Pa. at 430, 77 A.2d at 165. Certainly, Pennsylvania law has evolved considerably since that time, at least with respect to the shifting of evidentiary burdens when a party shows the ordinance to be unconstitutional on its face. *See, e.g., General Battery Corp. v. Zoning Hearing Board of Alsace Township,* 29 Pa. Commonwealth Ct. 498, 371 A.2d 1030 (1977). The Supreme Court's statement in *Mutual Supply,* however, does not affect our analysis of GMP's taking challenge.

to decide, *Snyder* at 392, 430 A.2d at 344, we shall not disturb the supervisors' findings concerning accessibility, based as they are upon substantial evidence of record.

Our inquiry does not end with an analysis of the ordinance's impact on GMP's subsurface coal estate, however, because we must also determine if the ordinance's mining ban in the township's S-1 district constitutes a taking of GMP's surface estate, rendering that property "valueless or no longer useful in a reasonable manner." *Snyder* at 395, 430 A.2d at 345.

Here, there was substantial evidence to support the supervisors' finding that GMP could develop the yellow area for a host of permitted uses; local resident and expert testimony, as well as the existence of Hegins Valley Park, a gun club, baseball parks, a boyscout camp, and the Tri-Valley School Environmental Study Area in the S-1 district enabled the supervisors to conclude that GMP could develop, among other things, tree farming, hiking trails, resort hunting camps, a scenic overlook and drive, and cross-country skiing and snowmobile trails. Although those alternative uses are potentially less profitable than strip mining, their availability clearly demonstrates that the township's ordinance does not render GMP's surface estate in the yellow area valueless or useless.

### Police Power

GMP also contends that the township's S-1 district prohibition against mining bears no rational relationship to the health, safety, morals or general welfare of the public because the ordinance's primary objective is to preserve merely the aesthetic values and rural character of the municipality. We disagree.

As found by the supervisors, Hegins Township enacted its zoning ordinance, in part, to preserve the

environmental integrity of the community.[16] Substantial evidence supports that finding. Various witnesses testified that strip mining along the relatively steep slopes of the northern mountain crest would hasten erosion of the slopes and that erosion caused by the natural runoff from excavated material and roadways would result in a substantial risk of turbidity in the Water Authority's springs and reservoir, and in Pine Creek and its tributaries. Moreover, blasting necessary for strip mining would create a substantial risk of harm to the Mauch Chunk acquifer and deep stripping cuts would (a) create a water barrier, entrapping natural runoff, and thereby impair the surface recharge of the Authority's water system and (b) contaminate the Authority's water supply and Pine Creek by surface and subsurface acid mine drainage through normal water flow from the cuts.

Witnesses for GMP challenged that assessment of harm to the water supply, claiming that (1) proper environmental law enforcement would guarantee the ecological well-being of the township during strip mining operations and, (2) the company's reclamation plans would ultimately improve the land. The supervisors, however, were free to accept the township view as more credible. *Snyder* at 392, 430 A.2d at 344.[17]

----

[16] The findings here, supported by substantial evidence of record, also reveal that the supervisors enacted the township's zoning ordinance to preserve property values, foster orderly development, prevent air pollution, and preserve the aesthetic value and rural character of the community.

[17] Indeed, the supervisors' skepticism toward GMP assurances of future compliance seems well-founded; uncontradicted testimony of record reveals that the company repeatedly failed to file necessary zoning applications for strip mining in the S-3 district. As the supervisors noted in Finding of Fact No. 47, compliance with reclamation requirements depends, in the first instance, on the mining company's willingness to comply with the law, a willingness the GMP historically has failed to demonstrate. Indeed, no GMP officer, director or shareholder even bothered to testify at the hearings.

*Update of Plan and Ordinance*

Finally, GMP claims that the zoning ordinance is defective because Hegins Township has not updated the ordinance and comprehensive plan to reflect changed conditions in the community since 1966. As noted by the common pleas court, however, GMP showed no changed circumstances which would merit such a review. Moreover, substantial evidence in the record reveals that in terms of restrictions imposed upon uses in the S-1 district, the comprehensive plan and the zoning ordinance are as valid today as when drafted.

Accordingly, we affirm.

#### ORDER

Now, March 14, 1983, the order of the Common Pleas Court of Schuylkill County, dated October 5, 1981, is affirmed.