597 A.2d 738

**BOARD OF SUPERVISORS OF SHENANGO
TOWNSHIP, Appellant,**

v.

**William and Donna McCLIMANS, James and Mabel Paige,
Michael and Paula Slavin, Stanley and Bernice Babick, Albert
and Florence Bober, Albert Zak, Edward Zak, Albert Presnar,
John P. Presnar, Medusa Cement Company, and Amerikohl
Land Company, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 1991.

Decided Sept. 25, 1991.

472

Gabriel P. Cilli, for appellant.

Thomas W. King, III, for appellees.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, PELLEGRINI and BYER, JJ.

COLINS, Judge.

The Board of Supervisors of Shenango Township (Board of Supervisors or appellant) appeals from an order of the Court of Common Pleas of Lawrence County (Common Pleas), dated May 24, 1990, reaffirming its prior opinion and order of January 31, 1990, and dismissing appellant's motion for post trial relief.

■ McClimans, et al., landowners of parcels of land, together comprising approximately one thousand acres (property), in Shenango Township, Lawrence County, Pennsylvania, executed leases to Amerikohl Land Company (landowners and lessee, hereinafter collectively referred to as appellees) to strip mine coal on their property. The property is zoned R-1 Residential. Under the then existing terms of the Shenango Township Zoning Ordinance (zoning ordinance), adopted May 22, 1967 and effective May 27, 1967, surface mining was not a permitted use in an R-1 Zone.[1]

Appellees filed with the Board of Supervisors a challenge to the validity of the zoning ordinance and a request for curative amendment to the zoning ordinance to rezone the property as a special uses district, allowing surface mining as a matter of right. Following a public hearing, the Board of Supervisors by written decision dated March 8, 1985, rejected the validity challenge and denied the request for curative amendment. Appellees appealed to Common Pleas which, by opinion and order dated January 29, 1986, affirmed the Board's decision. Upon further appeal, this Court in *McClimans v. Board of Supervisors of Shenango Township,* 107 Pa. Commonwealth Ct. 542, 529 A.2d 562 (1987) (*McClimans I*), remanded to Common Pleas for the taking of additional evidence or for further remand to the Board of Supervisors "for a determination of whether the Township's zoning ordinance conclusively [prevented Appellees] from gaining access to their subsurface property, thus rendering the ordinance invalid as a taking without just compensation." *Id.,* 107 Pa.Commonwealth Ct. at 559, 529 A.2d at 570 (footnote omitted).

The *McClimans I* Court further stated:

If a 'taking' is found to exist, the Township of course has the option of retaining the ordinance as is and paying the owners of the coal estate just compensation. If there is a

1. We note here that the Shenango Township Zoning Ordinance was amended February 8, 1990, to allow surface mining on the subject property of which this Court takes judicial notice.

'taking' and the Township subsequently amends the ordinance to allow the strip mining, the Township would then be required to pay just compensation for the harm caused to the [appellees] by the 'temporary taking.' ... This just compensation would include damages [appellees] could prove as a result of the delay in extracting the coal caused by the Township's ordinance.

*Id.*, 107 Pa.Commonwealth Ct. at 558, 529 A.2d at 570 (citation omitted).

On remand, Common Pleas held several hearings on the issue of whether the coal could be extracted from the property without violating the zoning ordinance. Both parties presented expert testimony on the issue. In addition, appellant presented testimony from two lay witnesses who had participated in and were familiar with mining operations in Shenango Township involving the same coal deposit that is the subject of this controversy. Common Pleas resolved credibility in favor of appellees' experts and concluded that appellees had met their burden of proving by a preponderance of the evidence that the zoning ordinance conclusively prevented them from gaining access to their coal. Therefore, by opinion and order dated January 31, 1990, Common Pleas held that the zoning ordinance effected a taking of appellees' property without just compensation. On March 9, 1990, Common Pleas granted appellant's motion for reconsideration; and on May 24, 1990, Common Pleas reaffirmed its prior decision of January 31, 1990 and denied appellant's motion for post-trial relief. This appeal followed.[2]

■ In light of the fact that prior to oral argument the zoning ordinance was amended February 8, 1990, to allow surface mining, this matter would be moot. However, it

**2.** Motions for Allowance to File Amicus Curiae Briefs Nunc Pro Tunc filed by the Pennsylvania Coal Association in support of appellees' position and by the Pennsylvania State Association of Township Supervisors in support of appellant's position were granted by this Court. Subsequently, by order of this Court dated January 8, 1991, a Motion to Quash was granted in part, thereby striking "pages 5 and 7 through 20" from the Pennsylvania State Association of Township Supervisors' amicus curiae brief.

was contended by appellees at oral argument on this matter that they would be entitled to damages for a partial taking for the period of time from which this action was initiated until the amendment of the zoning ordinance. Therefore, we will address the merits.

Appellant presents the following issues for our review: (1) whether Common Pleas erred in applying a preponderance of the evidence standard of proof in determining whether the zoning ordinance conclusively prevented appellees from gaining access to their subsurface property; (2) whether state and federal environmental and safety regulations enacted subsequent to the zoning ordinance prevented appellees from gaining access to their coal estate, rather than the zoning ordinance; and (3) whether the zoning ordinance conclusively prevented appellees from gaining access to their subsurface coal estate.

 Where, as here, Common Pleas takes additional evidence, we are limited to determining whether Common Pleas abused its discretion or committed an error of law. *Lamb v. Zoning Board of Adjustment of the Borough of Ambridge*, 111 Pa.Commonwealth Ct. 534, 534 A.2d 577 (1987). We may conclude that Common Pleas abused its discretion only if its findings are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*, 501 Pa. at 555, 462 A.2d at 640.

 Appellant argues that Common Pleas applied the wrong evidentiary standard in weighing the evidence presented by appellees on the issue of whether they were conclusively prevented from accessing their coal estate. Common Pleas adequately addressed this issue in both its January 31, 1990 and May 24, 1990 opinions. Common Pleas correctly noted that although the courts have characterized the burden in these matters as a heavy one, there is no case law suggesting that proof by more than a prepon-

derance of the evidence is required. Although use of the word "conclusively" in *McClimans I*[3] has apparently created some confusion, we emphasize that "conclusively" merely describes that which must be proven, while preponderance of the evidence refers to the standard or degree of persuasion which must be achieved. Therefore, we hold Common Pleas committed no error in applying that standard.

■ Appellant's next contention, that "State and Federal regulations prevented the Appellees from gaining access to their coal estate by deep mining, rather than Appellant's Ordinance," is without merit. First, appellant's brief is devoid of any specific citation to any such state or federal regulations. We can only presume that this argument is the same one that was presented below as to whether portions of the Township's zoning ordinance which regulate surface mining have been superseded by the Surface Mining Conservation and Reclamation Act (SMCRA), Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §§ 1396.1–1396.31 and are, therefore, void. Both the Board of Supervisors and this Court on appeal in *McClimans I* correctly determined that SMCRA "did not supersede the portions of the Township's zoning ordinances which deal with strip mining." *McClimans I*, 107 Pa.Commonwealth Ct. at 551, 529 A.2d at 567.

Lastly, appellant argues that appellees have failed to meet their burden of proving that the zoning ordinance conclusively prevented them access to their coal estate. Appellant maintains that because it presented evidence to show that appellees could reach the coal by underground mining, that there had been no taking.

This Court stated in *McClimans I* that:

[i]n order to be a 'taking' of the coal estate, the coal's exclusion must be *conclusively* prevented by the zoning

3. *See also Mutual Supply Company Appeal*, 366 Pa. 424, 77 A.2d 612 (Pa.1951) and *G.M.P. Land Company v. Hegins Township Board of Supervisors*, 72 Pa.Commonwealth Ct. 591, 457 A.2d 989 (1983), wherein the same terminology is used.

ordinance. In Mutual Supply Co. Appeal,[4] the Pennsylvania Supreme Court even went so far as to say that if underground mining can be accomplished at all, even if the surface opening for the mine is only available in another municipality, the fact that mining operations are not permitted and/or feasible in the municipality whose ordinance is being attacked does not constitute a 'taking.' *Id.*, 107 Pa.Commonwealth Ct. at 557–58, 529 A.2d at 569–70. The court in *Mutual Supply Co. Appeal,* stated that the mere fact that access to coal available through other means was more expensive and less convenient did not support a conclusion that the zoning ordinance's exclusion of industrial use on the surface estate conclusively prevented the company from mining and removing its coal.

Appellant is interpreting these cases as standing for the proposition that any evidence it presents to show that the coal can be accessed through underground mining is sufficient to defeat appellees' burden. The fact finder in zoning matters, herein Common Pleas, is the arbiter of credibility and may reject the testimony of an expert witness. We will not disturb those findings on appeal except where there has been an abuse of discretion. *Berman v. Manchester Township Zoning Hearing Board,* 115 Pa.Commonwealth Ct. 339, 540 A.2d 8 (1988), *petition for allowance of appeal denied,* 520 Pa. 619, 554 A.2d 511 (1989). Following a thorough review of the testimony presented before Common Pleas, we can find no abuse of discretion in Common Pleas credibility determination in favor of appellees' expert. Further, we conclude that Common Pleas' findings are supported by substantial, competent evidence of record.

Accordingly, we affirm the opinion and order of Common Pleas.[5]

4. 366 Pa. 424, 77 A.2d 612 (1951).

5. By this opinion, we are not holding that appellees are entitled to monetary damages. Furthermore, any claim for monetary damages is not properly before this Court and must be pursued under the provisions of the Eminent Domain Code, Act of June 22, 1964, Sp.

478

## ORDER

AND NOW, this 25th day of September, 1991, the opinion and order of the Court of Common Pleas of Lawrence County is affirmed.

BYER, Judge, dissenting.

The prohibition by zoning ordinance of all surface mining in R–1 Residential Zones in Shenango Township bears an obviously reasonable and substantial relationship to a compelling government interest in protecting the health, safety and welfare of citizens in the community and in preserving its environment. Therefore, the zoning ordinance was a reasonable exercise of Shenango's police powers and not a compensable "taking" of private property under either the federal or the state constitutions.[1] To the extent that our previous decision in this case, *McClimans I,*[2] holds to the contrary, it was wrongly decided and should be overruled.

As Mr. Justice Holmes stated, "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every" exercise of the police powers which interferes with or deprives a property owner of the value of existing property rights. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922). Property is held and enjoyed by its owners under the implied reservations of the

Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903. *See also McClimans I,* 107 Pa.Commonwealth Ct. at 559 n. 5, 529 A.2d at 570 n. 5.

**1.** The Fifth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, *see Chicago, B. & Q.R.R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), *and Missouri Pacific Ry. v. Nebraska,* 164 U.S. 403, 17 S.Ct. 130, 41 L.Ed. 489 (1896), provides: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V, XIV. Article I, section 10 of the Pennsylvania Constitution provides: "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." PA. CONST. art. I, § 10.

**2.** *McClimans v. Board of Supervisors of Shenango Township,* 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987).

police powers of government, but these powers are not without limits. *Id. Pennsylvania Coal* states:

One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts....

\* \* \* \* \* \*

... The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.

*Id.*, 260 U.S. at 413, 415, 43 S.Ct. at 159, 160.

The United States Supreme Court has been unable to establish any "set formula" to determine when a regulation of property under the police powers has gone "too far" so that it will be deemed a "taking." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); Comment, *Keystone Bituminous Coal Association v. DeBenedictis: A "Regulatory Taking"?,* 89 W.Va.L.Rev. 803, 811 (1987) (Van Damme) (hereafter *Comment*). This determination must be made upon a balancing of the private and public interests at stake. *Agins v. City of Tiburon,* 447 U.S. 255, 261, 100 S.Ct. 2138, 2141–42, 65 L.Ed.2d 106 (1980). Resolution of "taking" questions are "essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action—that have particular significance." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987) (citing *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979)); *Penn Central Transp. Co.,* 438 U.S. at 124, 98 S.Ct. at 2659.

In the context of zoning regulations, "application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate

state interests, ... or denies an owner economically viable use of his land." *Agins,* 447 U.S. at 260, 100 S.Ct. at 2141; *McClimans I,* 107 Pa.Commonwealth Ct. at 554, 529 A.2d at 568 (quoting *DeBenedictis* and *Agins* ). This formulation of the "taking" analysis in the context of zoning law should not be viewed as *requiring* a finding of "taking" whenever a zoning law denies an owner "the economically viable use" of his or her land; rather, diminution in value of property is *but one of the factors* in the "taking" analysis to be weighed against all other factors. *McClimans I* elevated diminution of the value of property to the status of sole determining factor, precluding a true judicial *balancing* of competing public and private interests.

In considering the economic impact of land use regulation upon the property owner, it is "relevant to compare property values before and after the regulation, though *such a consideration is by no means conclusive."* *National Wood Preservers, Inc. v. Department of Environmental Resources,* 489 Pa. 221, 236, 414 A.2d 37, 45 (1980) (emphasis added). The United States Supreme Court has recognized that regulation of property not involving actual physical invasion of property but merely proscribing certain uses, may be a valid exercise of the police power, and not a taking, even where a regulation causes property to lose all or nearly all of its value. *See, e.g.,* United States Supreme Court cases compared in *National Wood Preservers, Inc., id.; DeBenedictis,* 480 U.S. at 488 n. 18, 107 S.Ct. at 1243–44 n. 18 ("While the Court has almost invariably found that the permanent physical occupation of property constitutes a taking, ... the Court has repeatedly upheld regulations that destroy or adversely affect real property interests." (citations omitted)); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (regulation completely prohibiting best use of property, sand and gravel quarrying, is a valid exercise of the police power, and not a taking); *Miller v. Schoene,* 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (statute ordering property owners to destroy red cedar trees on property to prevent cedar rust

from contaminating nearby apple trees was a valid exercise of the police powers, and not a taking); *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887) (prohibition on use of property to manufacture liquor was a valid exercise of police powers, and not a taking, even though owner's brewery would thereby be rendered "of little value").

In *National Wood Preservers, Inc.,* Mr. Justice Roberts stated for our Supreme Court:

The "police power" is one of the "most essential powers of government...." ... It has been variously defined as the power "to promote the public health, morals or safety and the general well-being of the community," ... or as "the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare," ... or as a power extending to "all the great public needs," ... The police power is fundamental because it enables "civil society" to respond in an appropriate and effective fashion to changing political, economic, and social circumstances, and thus to maintain its vitality and order. ... "The police power of the state [must therefore be] ... as comprehensive as the demands of society require under the circumstances." ... Of necessity, then, the police power is a broad and flexible power. ... Indeed, it is the state's least limitable power. ...

A state power as broad as the police power inevitably gives rise to tensions between the state and holders of property. Although the police power "may, indeed, seem harsh in its exercise, [and] usually is on some individual, ... the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily." ... Therefore as long as the Legislature exercises that power in a reasonable and nonarbitrary manner, the judiciary will not invalidate the enactment. ...

489 Pa. at 231–33, 414 A.2d at 42–43 (citations omitted).

These observations on the police power and limitations on its exercise apply to zoning ordinances. "All zoning involves a 'taking' in the sense that the owner is not completely free to use his property as he chooses, but such a

taking does not entitle the owner to relief, unless the owner's rights have been unreasonably restricted." *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 88, 451 A.2d 1002, 1006 (1982) (citations and footnotes omitted).

In determining whether a property owner's rights have been "unreasonably restricted" by a zoning ordinance, the following principles apply:

> When presented with a challenge to a zoning ordinance, the reviewing court presumes the ordinance is valid. The burden of proving otherwise is on the challenging party. ...[3]

> A zoning ordinance is a valid exercise of the police power when it promotes public health, safety or welfare and its regulations are substantially related to the purpose the ordinance purports to serve. ... In applying that formulation, Pennsylvania courts use a substantive due process analysis *which requires a reviewing court to balance the public interest* served by the zoning ordinance *against the confiscatory or exclusionary impact of regulation on individual rights.* ... The party challenging the constitutionality of certain zoning provisions must establish that they are arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare. Where their validity is debatable, the legislature's judgment must control. ...

*See also Pennsylvania Northwestern Distrib., Inc. v. Zoning Hearing Board of Moon Township,* 526 Pa. 186, 190–91, 584 A.2d 1372, 1374 (1990) ("In this Commonwealth, all property is held in subordination to the right of its reasonable regulation by the government, which regulation is clearly necessary to preserve the health, safety, morals or general welfare of the people.")

3. The property owners have not claimed that Shenango has totally excluded a legitimate use of property throughout the township. Where an ordinance entirely prohibits a legitimate use, the burden shifts to the municipality to show that exclusion is necessary for the health, safety, morals or common welfare of the community. *Miller & Son Paving, Inc.,* 499 Pa. at 89 n. 6, 451 A.2d at 1006 n. 6.

Shenango's zoning ordinance prohibiting surface mining affects the three separate estates in land recognized in Pennsylvania—the surface estate, the coal estate and the support estate.[4] Restrictions by zoning ordinance "are not *per se* unreasonable simply because they limit the extraction of minerals." *Miller & Son Paving, Inc.,* 499 Pa. at 88, 451 A.2d at 1006; *G.M.P. Land Co. v. Board of Supervisors of Hegins Township,* 72 Pa.Commonwealth Ct. 591, 598, 457 A.2d 989, 993 (1983). Coal mining, and surface (or strip) mining in particular, obviously pose significant danger to the health, safety and welfare of a community and to its environment, and although lawful, it is a nuisance or a noxious use of property in relation to its residential neighbors. *E.g., DeBenedictis,* 480 U.S. at 491–92, 492 n. 20, 107 S.Ct. at 1245–46, 1245 n. 20; *see Amerikohl Mining, Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa.Commonwealth Ct. 249, 258–262, 597 A.2d 219, 224–225, (C.D. 1990, 1991). A municipality does not "take" anything when it exercises its police power to destroy the value of property by abating a nuisance. *Stein v. City of Philadelphia,* 125 Pa.Commonwealth Ct. 225, 229, 557 A.2d 1137, 1139–40 (1989) (citing *DeBenedictis*); *Commonwealth v. Barnes & Tucker Co.,* 472 Pa. 115, 371 A.2d 461 (1977).

In *DeBenedictis,* the United States Supreme Court upheld a statute of this Commonwealth which required coal extractors to leave in place approximately 50% of the coal beneath certain structures to provide support for the surface struc-

---

**4.** In *McClimans I,* we acknowledged that for purposes of deciding taking issues under the *federal* constitution, the significance of the support estate has been "obliterated," while the significance of the distinction between the coal and surface estates remains viable. 107 Pa.Commonwealth Ct. at 566–67 n. 4, 529 A.2d at 569 n. 4, (discussing *DeBenedictis,* 480 U.S. at 500–01, 107 S.Ct. at 1249–50). The United States Supreme Court has declined to assess the diminution in value of each separate strand of the "bundle" of rights associated with property. *See also Penn Central Transp. Co.,* 438 U.S. at 130, 98 S.Ct. at 2662 *quoted in Jones v. Zoning Hearing Board of the Town of McCandless,* 134 Pa.Commonwealth Ct. 435, 440, 578 A.2d 1369, 1371 (1990). As we stated in *McClimans I,* the coal estates and the surface estates are owned by the individual landowner appellees who have leased the coal estate to appellee Amerikohl.

tures and to prevent mine subsidence. The court held that the statute served a genuine, substantial and legitimate public purpose to prevent a perceived threat to the common welfare and to protect the public interest in health, the environment and "the fiscal integrity of the area," *i.e.* property values. 480 U.S. at 488, 107 S.Ct. at 1243.

Weighing the public interest against the diminution in value of the coal owner's property, the Supreme Court found the private interests subordinate, in part because no person has a right to use his property so as to create a nuisance or otherwise harm others. 480 U.S. at 492 n. 20, 21, 107 S.Ct. at 1245 n. 20, 21 ("Sic utere tuo ut alienum non laedus" or, "Use your own property in such manner as not to injure that of another."). Thus, even though the regulation would require the members of the coal association to leave over 27 million tons of coal in place, the court held that such diminution of the value of the coal estate was a valid exercise of the police power to abate a nuisance and to protect the public. The court also rejected the argument that the statute was a taking because it completely destroyed one strand of the "bundle" of property rights, namely the "support estate", a separate property interest in Pennsylvania.[5]

In *Miller & Son Paving, Inc.*, our Supreme Court upheld a zoning ordinance establishing setback requirements for quarrying operations to two hundred feet from a property line and three hundred feet from a road. The court rejected the property owner's argument that the setback requirements arbitrarily and unreasonably deprived the owner of 2,685,000 tons of stone worth over seven million dollars, and found the township's ordinance a valid exercise of the police powers, and not a taking under the powers of eminent domain. The court stated: "If a municipality can create *a use zone excluding surface mining altogether,* then it surely must be able to impose the lesser burden of requiring setbacks for such use in zones in which it is permitted." 499 Pa. at 88, 451 A.2d at 1006. *See also Willowbrook*

5. *See* note 4, above.

*Mining Co. v. Department of Environmental Resources,* 92 Pa.Commonwealth Ct. 163, 499 A.2d 2 (1985).

*McClimans I* purported to weigh the public interest against the burden that has been placed on the property owners and the lessee of their coal estates, and concluded that "an ordinance's exclusion of mining on the surface *can* amount to a taking of the coal estate below if the ordinance *'conclusively prevents'* an owner from gaining access to his subsurface property." *McClimans I,* 107 Pa.Commonwealth Ct. at 556, 529 A.2d at 569 (emphasis added) (quoting *G.M.P. Land Co.,* 72 Pa.Commonwealth Ct. at 598–99, 457 A.2d at 993–94, relying on *Mutual Supply Co. Appeal,* 366 Pa. 424, 430–31, 77 A.2d 612, 615 (1951)). If the trial court found on remand that the ordinance "conclusively prevented" the owners of the coal rights from gaining access to their subsurface property, there would be a taking because such an ordinance "denies an owner economically viable use of his land." *McClimans I,* 107 Pa.Commonwealth Ct. at 554, 529 A.2d at 568 (quoting *DeBenedictis*).

In so ruling, our previous decision gave short shrift to the compelling public interests protected by Shenango's zoning ordinance, and focused too intently on the perceived diminution in value of the coal estate which is *only one factor* to be weighed in balancing the public and private interests. Consideration of other relevant and important factors leads me to conclude that, on balance, Shenango's ordinance is a valid exercise of its police powers.

Shenango's board of supervisors found that "sources of drinking water may be adversely affected by strip mining, that blasting smoke is toxic and could blow off the mining site, that allowing strip mining would devalue homes in the area and that the blasting involved in strip mining could damage homes." *Id.* The danger presented constitutes a nuisance, and the ordinance reasonably prohibits this nuisance or noxious use of property in residential neighborhoods.

The zoning ordinance does not authorize the physical invasion of property in its R–1 districts, but merely regu-

lates its use.[6] The surface property is not rendered value-less nor has the whole bundle of property rights been rendered valueless by operation of the ordinance. To the contrary, the surface owners (who also own the coal es-tates) continue to enjoy the residential use of their property. Moreover, the board found that strip mining in residential areas would *devalue* homes in the area.

Importantly, the ordinance did not interfere with any *reasonable* investment backed expectations of the property owners or the lessee. *Penn Central Transp. Co.*, 438 U.S. at 124, 98 S.Ct. at 2659. The zoning ordinance was enacted in 1967, and the landowners subsequently leased the coal estates to Amerikohl. Although the landowners and Ameri-kohl might have expected *subjectively* to be able to secure a curative amendment to the ordinance to permit surface mining, that expectation could not be considered "reason-able" in light of the presumptively valid, existing ordinance banning surface mining.

Balancing the private interests (diminution in value of the coal estates) against the competing public interests in the health, safety, and welfare of the community and in the environment, and weighing *all* relevant factors in conduct-ing this balance, the scales tip distinctly in favor of finding a valid exercise of Shenango's police powers.

The ruling in *McClimans I* to the contrary illustrates Mr. Justice Holmes' above-quoted comment in *Pennsylvania Coal* that government "hardly could go on if to some extent values incident to property could not be diminished without paying for" every exercise of the police powers. Some eight days after the trial court, adhering to our remand order in *McClimans I*, found the "taking", Shenango amended its ordinance to permit surface mining. Thus, Shenango was judicially coerced to make the Hobson's choice between straining the public coffers to compensate for future "taking" of the coal estate, or risking the health,

---

6. "Takings" are more readily found when the governmental interfer-ence with property can be characterized as an actual physical inva-sion. *Comment* at 811.

safety and welfare of its citizens and jeopardizing its environment.

Shenango's zoning ordinance banning surface mining in residential neighborhoods was substantially and reasonably related to legitimate, indeed compelling, community interests. "Restrictions or obligations imposed on the use or ownership of property to protect the public health, safety or morals from dangers threatened, if reasonably necessary to dispel the particular danger, do not constitute a taking." *Commonwealth v. Barnes & Tucker Co.*, 472 Pa. at 128, 371 A.2d at 467–68. I would uphold Shenango's reasonable exercise of its police powers, and would find no unconstitutional taking of property. Therefore, I believe that *McClimans I* should be overruled—if not by us, then by our Supreme Court.

PELLEGRINI, J., joins in this dissenting opinion.