Council of Middletown Township, Delaware County, Pennsylvania, Appellant *v.* Alice S. Benham, Co-Executrix and Mary Christine Moran, Co-Executrix of the Estate of Grant J. Benham, Appellee.

Alice S. Benham, Co-Executrix and Mary Christine Moran, Co-Executrix of the Estate of Grant J. Benham, Appellant *v.* Council of Middletown Township, Delaware County, Pennsylvania, Appellee.

Argued December 13, 1984, before Judge CRAIG, and Senior Judges BLATT and BARBIERI, sitting as a panel of three.

*Robert B. Surrick, Levy and Surrick,* for appellant/appellee, Council of Middletown Township, Delaware County, Pennsylvania.

*Vincent B. Mancini, Kassab, Cherry & Archbold,* for appellant/appellee, Alice S. Benham, Co-Executrix and Mary Christine Moran, Co-Executrix of the Estate of Grant J. Benham.

OPINION BY JUDGE CRAIG, August 16, 1985:

The Council of Middletown Township (council) (Appeal No. 1269 C.D. 1982) and the Estate of Grant

J. Benham (developer) (Appeal No. 1305 C.D. 1982) cross-appeal from an order of the Court of Common Pleas of Delaware County which: (1) sustained the developer's substantive challenge to the validity of two sections of the Middletown Township Code of Ordinances;[1] (2) reversed the council's decision to deny the developer's application for tentative approval of a planned residential development (PRD) consisting of 113 units; and (3) granted tentative approval for a PRD consisting of 86 units.[2]

The central issue in the council's appeal concerns the meaning and validity of the zoning ordinance requirement that all PRDs must be serviced by a "public sanitary sewer systems." The developer's cross-appeal questions the trial court's conclusion that a railroad right-of-way constitutes a "public way" dividing the development tract so that maximum density compliance must be attained independently within each of the divisions.

The developer owns approximately 104.2 acres located in Middletown Township, Delaware County, Pennsylvania and zoned R-1A.[3] In his application for tentative approval of a PRD, he proposed a project

---

[1] Section 309(7) requiring "public sanitary sewer systems" for all PRDs and section 309H(2)(h), requiring PRD applications to show tree locations. (See n. 4 below.) All references to sections within the Code of Ordinances are to Chapter IX, Zoning, unless otherwise noted.

[2] The trial court granted tentative approval for eighty-six (86) units as compared to the 113 units originally proposed by the developer after concluding that Chapter IX, section 309E of the Middletown Township Code of Ordinances, Density, would allow for only 86 units.

[3] The R-1A residence district is "designed to provide primarily for the special needs of large rural farm areas of the Township and to encourage the preservation of ample and appropriate areas for agriculture, recreation, conservation and other open space purposes." Section 309H of the Code of Ordinances. Permitted uses include

consisting of 82 townhouse units and 31 single-family units which would be serviced by an on-site sewage package treatment plant, operation of which would result in the discharge of treated sewage into Chester Creek. The council denied the application.

An appeal by the developer resulted in a remand by the court of common pleas for additional hearings. Thereafter, the developer initiated proceedings under sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code (MPC), Act of June 1, 1972, P.L. 805, *as amended,* 53 P.S. §§10609.1, 11004, challenging the validity of sections 309C(7) and 309H(2) (h) of the Code of Ordinances.

After numerous hearings, the council decided again to deny tentative approval of the developer's PRD application and to dismiss the curative amendment petition. Administrative Judge PRESCOTT, of the court of common pleas, reversed the council and granted tentative approval of an 86-unit PRD, having concluded that the challenged sections were invalid. These cross-appeals ensued.

Because the trial court did not take any additional evidence, our scope of review is limited to determining whether or not the governing body, here the council, abused its discretion or committed an error of law. *See G.M.P. Land Co., Inc. v. Board of Supervisors of Hegers Township,* 72 Pa. Commonwealth Ct. 591, 457 A.2d 989 (1983).

*Appeal No. 1269 C.D. 1982*

In its appeal,[4] the council challenges the trial court's determination that ordinance section 309C(7),

---

woodlands, wildlife and nature preserve, buildings for agricultural use, government owned parks and recreation areas, and single family detached dwellings.

[4] The council is not appealing from the trial court's decision that section 309H(2)(h) of the Code of Ordinances is constitutionally

which requires that a PRD be serviced "by public water and *public sanitary sewer systems*", (emphasis added), is invalid (1) because the regulation of sewage systems has been preempted by both the Pennsylvania Sewage Facilities Act[5] and The Clean Streams Law[6] and (2) because such a restriction is not a reasonable exercise of the municipality's police powers.

The council also challenges the trial court's determination that, even if that section were constitutional, the on-site sewage package treatment plant proposed by the developer would be a "public sanitary sewer system" under the ordinance and thus the council erroneously denied tentative approval. We note initially that both Middletown Township and Delaware County have refused to accept a dedication of the proposed system and that the term "public" is nowhere defined in Chapter IX, Zoning, of the Code of Ordinances. Consequently, we must determine what the drafters of this ordinance intended by the use of the term "public" in the section.

An undefined term in a zoning ordinance "must be interpreted and applied in accordance with its usual and generally accepted meaning." *Fidler v. Zoning Board of Adjustment,* 408 Pa. 260, 264, 182 A.2d 692, 694 (1962). *See also Kuhn v. Hanover General Hospital,* 34 Pa. Commonwealth Ct. 207, 382 A.2d 1305 (1978) and *V.S.H. Realty v. Zoning Hearing Board of Sharon Hill,* 27 Pa. Commonwealth Ct. 32, 365 A.2d 670 (1976). Additionally, the rules of statutory con-

---

invalid. Section 309H(2)(h) required that an application for tentative approval of a PRD include a description of natural features and the location of all trees with trunks six inches or more in caliper at a point twelve inches above the ground.

[5] Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §750.1 *et seq.*

[6] Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.1 *et seq.*

struction are applicable to local zoning ordinances. *Heck v. Zoning Hearing Board for Harveys Lake Borough,* 39 Pa. Commonwealth Ct. 570, 397. A.2d 15 (1979).

The developer argues that his sewage system would be "public", despite the fact that it would be owned and operated by either a private concern or the occupiers of the PRD, because it would be servicing a "community". The term "public" as it is generally used, however, denotes ownership by a governmental entity, either a municipal authority, the municipality itself, or the county or the Commonwealth.[7]

This developer's present proposal actually falls under the term "[c]ommunity sewage system" as defined in the Sewage Facilities Act, in which the legislature has indicated that label to be the appropriate one for "any system, whether publicly or privately owned, for the collection of sewage . . . from two or more lots. . . ." Section 2 of the Pennsylvania Sewage Facilities Act, 35 P.S. §750.2.

Therefore, accepting the township's interpretation of its own ordinance term, we proceed on the basis that the ordinance demands public agency ownership of the sewage system as a prerequisite of PRD approval.

Hence we reach the question of whether that requirement is void by reason of state preemption under the Pennsylvania Sewage Facilities Act. Our court

---

[7] Webster's Third New International Dictionary (unabridged) defines public as follows:

[O]f, relating to, or affecting the people as an organized community : of or relating to the international community or mankind in general: *authorized or administered by or acting for the people as a political entity* . . . of or relating to business or community interests as opposed to private affairs . . . accessible to or shared by all members of the community . . . *providing services to the people on a business basis under some degree of civic or state control.* (Emphasis added.)

has previously ruled that the enactment of that act "resulted in a limited preemption of the field of regulation of sewage operations, including the disposal of the 'sludge' from such operations." *Greater Greensburg Sewage Authority v. Hempfield Township*, 5 Pa. Commonwealth Ct. 495, 501, 291 A.2d 318, 321 (1972).[8]

Most importantly, section 7(a) of the Pennsylvania Sewage Facilities Act, 35 P.S. §750.7(a), provides that "an individual sewage system or community sewage system" is entitled to approval by way of permit if it complies with that act and the standards established under it. Thus the developer's proposed system— which, as noted above, would fall under the act's "community sewage system" category—could, at the proper juncture, be entitled to issuance of a permit under the state law. Accordingly, the township zoning ordinance, by barring all possibility of any approval of this proposed system for the PRD, solely on account of its private ownership, is clearly in conflict with the entire thrust of the state's regulatory scheme to permit or reject sewage systems on the basis of their actual technical compliance with sanitary standards.

One of the township's claims in this case sharply illustrates the point. The township contends that privately-owned package systems tend to be of a type which threatens the public health. Thus the township has made it plain that the township, by zoning, is seeking to control the type of sewage system, without reference to the state program which entirely embraces the determination of proper type.

---

[8] In *Greater Greensburg*, we found a local ordinance invalid which required the operator of a sewage treatment facility to obtain a permit from the township supervisors before disposing of sludge in the township in addition to obtaining a permit from the county department of health authorizing such disposal pursuant to the Pennsylvania Sewage Facilities Act.

Judge PRESCOTT therefore was correct in concluding that the public sewage system requirement was void as preempted by the state law.

In view of that conclusion, we need not further consider the question of alleged preemption by The Clean Streams Law nor the trial court's alternative conclusion that the public sewage system requirement was invalid as unreasonable. However, noting the township's acknowledgment on the record that a public sewer system cannot be expected for the area in question before the year 2000, we agree with the trial judge's negation of the township's catch-22 ordinance condition, which sets a goal which is unattainable for the next 15 years by virtue of the locality's own public plans. Although the ordinance allows other residential development in this district to be served by private sewage facilities, the public system requirement for PRDs thus effects a blanket prohibition of planned residential development, even though the ordinance decrees that PRDs constitute an appropriate land use in the district.

### Appeal No. 1305 C.D. 1982

In the cross-appeal, the developer argues that the trial court erred in accepting the council's conclusion that the railroad track which divides his land is a "public way" within the meaning of ordinance section 309C(5) and that, consequently, the density requirements for a PRD, as found in ordinance section 309E,[9]

---

[9] Section 309E of the Code of Ordinances provides, *inter alia*, that:

Subject also to any other applicable density limitations set forth herein, the total number of dwelling units to be permitted in any Planned Residential Development shall not exceed the number of dwelling units which would be allowed at the time application for preliminary approval is made, in the particular zoning district in which the

must be applied to each portion of the proposed development.

Section 309C(5) states, in pertinent part, that:
In order to qualify under this Ordinance as a Planned Residential Development (PRD), said development shall provide for a minimum of fifty (50) acres of land. . . . *If any portion of such tract is divided by* an existing street or other *public way from the remainder of the tract, the density requirements of Subsection E herein shall be applied to each of the segments of land so divided,* provided that this requirement may be waived or modified by the Township Council on recommendation by the Planning Commission in any case where such modification is determined to be in the best interests of the Township. (Emphasis added.)

The term "public way" is not defined in Chapter IX, Zoning, of the Code of Ordinances. We agree, however, with Judge PRESCOTT's determination that "public way", as defined by Black's Law Dictionary, includes a railroad and that consequently the drafters of section 309C(5) intended the density requirements of Section 309E to apply to each segment of a property which is divided by a railroad.[10]

---

majority, in terms of square footage, of the total tract being considered is located; provided, however, in no event shall more than forty thousand (40,000) square feet be required per dwelling unit.

[10] Trial Judge PRESCOTT stated as follows:

Black's Law Dictionary, Revised Fourth Edition, 1968, defines the term 'public way' as a 'highway.' With respect to the word 'highway', Black's Law Dictionary, supra, states that it is:

The generic name for all kinds of public ways, whether carriage-ways, bridle-ways, footways, bridges, turnpike roads, *railroads*, canals, ferries or navigable rivers. (Emphasis supplied.)

The appropriateness of our conclusion in this respect is confirmed by the fact that the developer proposes to maintain only open land on one side of the railroad, as a recreational area. Even though the PRD residents could have access across the railroad to that area, the divisive effect of a public way—particularly a railroad—with respect to unified utilization of the entire development is a factor which underscores the rationality of the public way provision and our interpretation of it.

## Relief

Finally, the council has contested the trial court's implementation of relief, ordering that the developer's "application for preliminary approval of a planned residential development for 86 dwelling units be and the same is hereby approved." The council, acknowledging that the trial court, given its reversing action, could prescribe a stated density, contends nevertheless that the court should subject the developer to the township's further consideration with respect to a revised preliminary plan.

However, section 1011(b)(2) of the Pennsylvania Municipalities Planning Code, 53 P.S. §11011(b)(2), accords to the trial court wide discretion in molding relief where the court has concluded that an ordinance provision unlawfully restricts a development. We believe that the court's relief approach is proper, in that it avoids what would undoubtedly be a further inter-

Section 309.C.5, supra, clearly provides that certain density requirements must be complied with if a tract of land is divided by 'an existing street or other public way'. By inclusion of the term 'public way', it would appear that the drafters of the ordinance intended to include more that [sic] just a street as a dividing line.

*Benham v. Council of Middletown Township*, No. 79-17771, slip op. at 9 (Court of Common Pleas of Delaware County May 3, 1982).

minable wrangle over a refashioned preliminary plan. Under the ordinance and under MPC §711, 53 P.S. §10711, the developer must yet prepare and submit an application for final plan approval, so that municipal regulation of the actual configuration of the reduced-density development is not eliminated.

Judge PRESCOTT's sound decision and order is therefore affirmed.

ORDER

Now, August 16, 1985, the order of the Court of Common Pleas of Delaware County, dated May 3, 1982, is affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.

Judge DOYLE did not participate in the decision.