## STABLER DEVELOPMENT COMPANY and Eastern Industries, Inc., Appellants,

v.

## BOARD OF SUPERVISORS OF LOWER MT. BETHEL TOWNSHIP, PENNSYLVANIA.

Commonwealth Court of Pennsylvania.

Argued April 8, 1997.

Decided May 14, 1997.

Reargument and Reconsideration Denied July 17, 1997.

Sherill T. Moyer, Harrisburg, for appellants.

Robert J. Sugarman, Philadelphia, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Stabler Development Company (Stabler) and Eastern Industries, Inc. (Eastern) appeal from an order of the Court of Common Pleas of Northampton County (trial court) which: (1) affirmed the decision of the Lower Mount Bethel Township (Township) Board of

Supervisors (Board) denying and dismissing their challenge to the validity of the Township Zoning Ordinance (Ordinance) and their request for a curative amendment;[1] and (2) denied their petition for the appointment of a board of viewers filed under section 502(e) of the Eminent Domain Code.[2]

In 1983, Stabler acquired a large tract of land from Alpha Portland Industries (Alpha). The property is located in the Township and is divided into two smaller tracts by Route 611. For decades, the 800 acres which lie on the eastern side of Route 611 have been used for sand and gravel quarrying operations. In the 1960's, Alpha conducted studies to determine whether the 28 acres on the western side of Route 611 were suitable for that purpose. The Township's 1971 Comprehensive Plan noted that Alpha planned to quarry sand and gravel from the 28–acre tract in about 15 years, after the 800–acre portion has been exhausted. However, the 28 acres have never been used for quarrying operations.

Under the Township's Ordinance, enacted in 1972, the 800 acres are located in an "Industrial" zoning district, where quarrying activities are permitted, and the 28 acres are located in a "Low Density Residential" zoning district, where quarrying and surface mining activities are neither permitted uses nor allowed by special exception.

In 1980, Alpha obtained mining permits from the Department of Environmental Resources (DER) authorizing the extraction of rock, stone, sand and gravel by surface mining methods on the western 28 acres, which DER viewed as an integral part of the total acreage.

When Stabler acquired the property from Alpha in 1983, Stabler assigned the mining permits to Eastern, its subsidiary, as part of a lease agreement. In 1984, Eastern commenced surface mining on the 28 acres contending that mining was permitted on the property as a prior non-conforming use. The Township filed a motion with the trial court to enjoin Eastern's mining activities on the 28 acres; however, the trial court denied the motion.

On appeal from the trial court's decision, we held that, because the 800–acre and 28–acre tracts were non-contiguous, Eastern could not establish quarrying as a prior non-conforming use on the 28–acre tract based on the quarrying activities on the 800–acre tract. Thus, we reversed the trial court's decision and enjoined Eastern from mining the 28 acres. *Lower Mount Bethel Township v. Stabler Development Co.*, 97 Pa. Cmwlth. 195, 509 A.2d 1332 (1986), *appeal denied*, 516 Pa. 620, 531 A.2d 1121 (1987).

On February 8, 1993, Stabler and Eastern renewed their efforts to quarry the 28 acres by challenging the validity of the Township's Ordinance and by requesting that the Township's Board adopt a proposed curative amendment. Stabler and Eastern contended that the Ordinance effectuates an unconstitutional "taking" or condemnation of their mineral estate in the 28 acres; thus, the Township should either adopt the proposed curative amendment or pay just compensation for the mineral estate.

The Board held hearings on the matter and, on March 1, 1994, denied and dismissed the challenge. In reaching its result, the Board concluded that, because sand and gravel are extremely common in the community and the world, they do not constitute a separate interest in land for zoning purposes. (Board's Conclusions of Law, Nos. 1–5, 8.) Stabler and Eastern appealed the Board's decision to the trial court.

In addition, on April 2, 1994, Stabler and Eastern filed with the trial court a petition

---

1. A landowner who desires to challenge on substantive grounds the validity of a zoning ordinance "which prohibits or restricts the use ... of land in which [the landowner] has an interest may submit a curative amendment to the governing body." Section 609.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *reenacted and amended* by section 53 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10609.1.

2. "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers ... setting forth such injury." Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502(e).

for the appointment of a board of viewers. In their petition, Stabler and Eastern alleged that the Township's enforcement of its Ordinance constitutes a *de facto* condemnation of their mineral estate in the 28–acre tract, and that they are entitled to just compensation. On November 9, 1995, the trial court consolidated the land use appeal and the petition for the appointment of a board of viewers for argument.

The trial court noted that various Pennsylvania courts have recognized separate mineral estates in coal, limestone, flint clay, iron ore, a certain type of sand which possesses unique characteristics and value, and stone and rock. However, because only the coal cases involved land use regulation, the trial court concluded that, except for coal, Pennsylvania does not recognize a separate mineral estate in the context of land use regulation. The trial court also stated that, even if it were willing to recognize a separate mineral estate for other materials, it would not do so for ubiquitous sand and gravel. Thus, the trial court upheld the Board's decision with respect to the land use appeal and denied the petition for appointment of a board of viewers.

■ On appeal to this court,[3] Stabler and Eastern argue that the Board and trial court erred in concluding that Pennsylvania does not recognize separate mineral estates in non-coal materials in the context of land use regulation; thus, the Township's Ordinance, which conclusively prevents Stabler and Eastern from gaining access to its mineral estate, has resulted in a *de facto* condemnation or regulatory taking. We disagree.

■ If the effect of a zoning law is to deprive property owners of the lawful use of their property, it amounts to a "taking" for which the owners must be justly compensated. *G.M.P. Land Co. v. Board of Supervisors,* 72 Pa.Cmwlth. 591, 457 A.2d 989 (1983).

However, because all zoning involves a "taking" in the sense that landowners are not completely free to use their property as they choose, such a "taking" does not entitle the landowners to relief unless the owners' rights have been unreasonably restricted. *Miller & Son Paving v. Wrightstown Township,* 499 Pa. 80, 451 A.2d 1002 (1982); *G.M.P. Land Co.* In *Miller & Son Paving,* our supreme court stated:

> Reasonable restrictions are valid exercises of the police power and not unconstitutional takings under the power of eminent domain. Restrictions are not *per se* unreasonable simply because they limit the extraction of minerals. .... [A] municipality can create a use zone excluding surface mining altogether....

The valid exercise of the zoning power is predicated upon its exercise for a legitimate public purpose. Accordingly, zoning ordinances must be enacted for the health, safety or general welfare of the community and their provisions ... must advance those purposes. .... In applying this test to the review of zoning ordinances this court has in some cases held that an appellant must prove the challenged ordinance bears no substantial relationship to the health, safety, morals or general welfare of the community. .... Alternatively, this Court has subjected other zoning ordinances to a somewhat less stringent standard of scrutiny holding that before a court may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare. .... Regardless of which standard of scrutiny we employ the zoning ordinance is normally presumed valid and the burden of proving otherwise is on the challenging party.

**3.** In a land use appeal, where a full and complete record was made before the Board and the trial court took no additional evidence, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

Where the trial court has ruled on a petition for the appointment of viewers, our scope of review is limited to whether the trial court abused its discretion or committed legal error. *McGaffic v. Redevelopment Authority,* 120 Pa. Cmwlth. 199, 548 A.2d 653 (1988), *appeal denied,* 523 Pa. 644, 565 A.2d 1168, *and appeal denied,* 523 Pa. 645, 565 A.2d 1169 (1989).

*Miller & Son Paving*, 499 at 88–89, 451 A.2d at 1006.

■ Here, the Board found that: (1) the 28–acre tract is bounded by a number of homes which are served by on-site wells; (2) it is likely that the tract acts as a recharge area for the water bearing zone tapped by the residential wells; (3) it is likely that the intended quarrying of 50 feet to the level of Route 611 will adversely and substantially affect the quantity of water available for residential use in the surrounding area; (4) the planned excavation would cause most or all of the tract to become a flood plain and, as a result, be unsuitable for residential construction; (5) the quarrying would cause a loss of topographical and geographical integration with the existing Village of Martins Creek; (6) there is no other potential compatible area for expansion of the Village of Martins Creek; (7) the Township's comprehensive plan recognizes the importance of the tract for community benefit but also provides a range of economic uses for the developer; (8) the exit to Route 611 from the batching plant is subject to inherent risk; (9) the proliferation of hundreds of quarrying trucks would exacerbate an existing unpleasant condition approaching the Village of Martins Creek; (10) the proposed quarry use would generate noise and dust and constitute a nuisance condition in the community; (11) the proposed use would have a significant adverse impact on the quality of life in the surrounding area; and (12) in summary, the proposed use would have a significant and adverse effect on the health, safety and welfare of the community while offering no offsetting benefit to the community. (Board's Findings of Fact, Nos. 8–12, 14–15, 18–20, 24–27, 31.)

Stabler and Eastern do *not* challenge these findings of fact.[4] Absent such a challenge, we fail to see how Stabler and Eastern can meet their burden of proving that the Township's placement of the 28 acres in a "Low Density Residential" district has no relation to the public health, safety, morals or welfare. Indeed, it is apparent from the Board's

findings that, in zoning the 28 acres, the Township was concerned about the health, safety and welfare of the community. Therefore, the Township's zoning of the 28 acres is *not* an invalid exercise of the Township's police power and does *not* effectuate an unconstitutional "taking" under the Township's eminent domain power. *Wrightstown.*

■ Stabler and Eastern, however, argue that *Wrightstown* is not the proper standard to apply here. Instead of *Wrightstown*, Stabler and Eastern urge this court to apply the principle of law set forth in *G.M.P. Land Co., McClimans v. Board of Supervisors*, 107 Pa. Cmwlth. 542, 529 A.2d 562 (1987) (*McClimans I* ), and *Board of Supervisors v. McClimans*, 142 Pa.Cmwlth. 470, 597 A.2d 738 (1991) (*McClimans II* ), *appeal granted*, 530 Pa. 635, 606 A.2d 904 (1992). In those cases, this court noted that Commonwealth law recognizes three separate estates in land: (1) a coal estate; (2) a surface estate; and (3) the right to support. *G.M.P. Land Co., McClimans I, McClimans II.* With that in mind, we stated that, to determine if a township ordinance effectuates the "taking" of a *coal* estate, we examine whether the ordinance unreasonably restricts access to the *coal* estate, or whether the ordinance conclusively prevents access to the *coal. G.M.P. Land Co., McClimans I, McClimans II.*

Stabler and Eastern assert that, in addition to the separate coal estate, Pennsylvania has also recognized a mineral estate in sand and gravel; thus, our inquiry here should be whether the Township's Ordinance conclusively prevents access to the sand and gravel on the 28 acres. We do not agree that Pennsylvania has recognized a mineral estate in sand and gravel in the same way that Pennsylvania has recognized the separate coal estate. Therefore, we decline to treat Stabler's and Eastern's sand and gravel as a coal estate and apply the "taking" standard enunciated in *G.M.P. Land Co., McClimans I*, and *McClimans II.*

■ In support of their position, Stabler and Eastern cite *Miller and Son Paving, Inc. v. Plumstead Township*, 680 A.2d 5 (Pa. Cmwlth.1996), *appeal granted, application denied in part*, 690 A.2d 711 (Pa.1997) (limit-

---

4. Indeed, in their Reply Brief, Stabler and Eastern acknowledge that "the sole issue before this Court is the pure legal issue of whether, under

Pennsylvania law, a separate mineral estate in non-coal minerals exists in the context of land use regulation." (Reply brief at 1.)

ing the issue to whether invalidating a zoning ordinance constitutes an automatic *de facto* taking).[5] In *Plumstead*, a landowner filed a petition for appointment of viewers alleging that the township's zoning ordinance conclusively prevented the landowner from mining *stone* during the pendency of the landowner's successful curative amendment challenge.[6] This court held that the landowner established a temporary *de facto* taking because the township's invalid ordinance constituted exceptional circumstances which substantially deprived the landowner of the beneficial use and enjoyment of its property.[7]

However, the outcome in *Plumstead* was *not* based on the existence of a mineral estate with respect to stone; rather, the result was based on the fact that the township's invalid exclusion of quarrying from the township constituted exceptional circumstances. Here, the Township has *not* prohibited the quarrying of stone and gravel within the Township. Indeed, the Township's Ordinance here permits quarrying operations in an "Industrial" zone.[8] Thus, in this case, exceptional circumstances do *not* exist which substantially deprive Stabler and Eastern of the beneficial use and enjoyment of their property.

Stabler and Eastern also contend that *Millcreek v. N.E.A. Cross, Inc.*, 152 Pa. Cmwlth. 576, 620 A.2d 558 (1993), *appeal denied*, 537 Pa. 655, 644 A.2d 739 (1994), does not preclude this court from extending the coal estate principle to non-coal materials.

In *Millcreek*, we stated, in dicta, that *McClimans I* did not apply to a leasehold interest to explore for natural gas because *McClimans I* was based on Pennsylvania's recognition of a separate coal estate. We believe that the statement clearly draws a distinction between cases involving a coal estate and cases involving other natural resources.[9] Moreover, we believe that such a distinction is valid.

Finally, Stabler and Eastern point out that, in *G.M.P. Land Company*, this court cited *Township of Paradise v. Mt. Airy Lodge, Inc.*, 68 Pa.Cmwlth. 548, 449 A.2d 849 (1982), which involved the mining of common shale, for the proposition that Pennsylvania law recognizes three separate estates in land. However, in *Township of Paradise*, this court identified the three estates as the coal estate, the surface estate and the right to support. We did not even suggest that Pennsylvania recognized a mineral estate in common shale.

Accordingly, we affirm.

### ORDER

**AND NOW**, this 14th day of May, 1997, the order of the Court of Common Pleas of Northampton County, dated July 8, 1996, is affirmed.

5. In their brief, Stabler and Eastern contend that, in *Plumstead*, this court rejected an argument that Pennsylvania law distinguishes between a coal and non-coal mineral estate. In fact, according to Stabler and Eastern, Appendix B to their brief is a portion of a brief from *Plumstead* in which such an argument was made. However, Appendix B is not part of the record certified to this court, and, as a result, we may not consider it here.

6. The township's zoning ordinance was invalid because it failed to make provisions for quarrying, bituminous asphalt plants and ready-mix concrete plants within the township.

7. To establish a *de facto* taking, a landowner must show that there were exceptional circumstances which substantially deprived the property owner of the beneficial use and enjoyment of the property. *Appeal of D.R.E. Land Developing, Inc.*, 149 Pa.Cmwlth. 290, 613 A.2d 96 (1992).

8. We note that the principle of law which governs the total exclusion of a particular use of land is different from that which governs a partial exclusion. *See Ficco v. Board of Supervisors*, 677 A.2d 897 (Pa.Cmwlth.1996).

9. Stabler and Eastern note that, in *Duquesne Natural Gas Company v. Fefolt*, 203 Pa. Superior Ct. 102, 198 A.2d 608 (1964), our superior court held that an interest in the oil and gas from a property constitutes an estate in land, explaining that "the ownership of oil and gas is similar to that of coal, where there are three estates of land, the coal itself, the surface estate and the right of support." *Id.* at 106, 198 A.2d at 610. However, *Duquesne Natural Gas Company* is not a land use regulation case and, therefore, cannot stand for the proposition that Pennsylvania courts have recognized a mineral estate in oil and gas in the context of land use regulation.