**In re ALEX B.**

**No. 98–498–Appeal.**

Supreme Court of Rhode Island.

June 15, 2000.

Thomas J. Corrigan, Jr., Providence, for DCYF, Plaintiff. Frank P. Iacono, Jr., for CASA, Plaintiff.

Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent mother, Denise B. (Denise or mother), has appealed a Family Court decree terminating her parental rights to her son, Alex.[1] This case came before the Supreme Court for oral argument on May 8, 2000, pursuant to an order directing the parties to appear in order to show cause why the issues raised on appeal should not be summarily decided. After hearing the arguments and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.[2]

1. The parental rights of Alex's father were terminated by default judgment on May 30, 1997. That judgment has not been appealed.

2. At oral argument, the mother's counsel disclosed that the foster parents were undecided whether to adopt Alex, and she moved to hold this case in abeyance until the October argument calendar so that the question of whether the foster parents would adopt could be answered. The motion was opposed by counsel

Denise has four daughters and one son (Alex), born between 1983 and 1993. Alex was born in 1990. The Department of Children, Youth and Families (DCYF) became involved with the family in October 1992 because Denise had left her children with relatives who later decided that they could not care for them. At that time the children were placed with their maternal grandparents, although in September 1993 Alex was placed in foster care because, his caseworker testified, "his behavior was too much for his grandparents to handle."

Denise had admitted that she was a heroin addict, and various case plans were developed for her, with the objectives of dealing with her substance abuse problem, finding suitable housing, and addressing parenting issues. According to a caseworker, DCYF made referrals to various programs to assist Denise in meeting these objectives. Denise initially did not comply with her case plans, leaving drug treatment and failing to maintain contact with DCYF for a period of time. In 1995, Denise reentered a drug treatment program, and by May 1996 her four daughters were returned to her because she had completed drug treatment and had secured appropriate housing. She was unable to cope with her two oldest daughters, and in the summer of 1996 these two girls were again removed to foster care at Denise's insistence.[3]

Since 1993, Alex has been living with the same foster family. When he first was placed with the family, he displayed extremely violent tendencies. He bit his foster brother, tried to choke people, and threw a kitten over a rail. He was expelled from three different daycare facilities because of his destructive and dangerous behavior. The foster parents contacted DCYF for assistance, and Alex has received counseling from a therapist,

Carrie Ruggieri–King, a qualified expert in family and child counseling. Alex was diagnosed as having a non-attachment disorder because he did not have any primary person from whom he sought comfort or security. The therapist testified that over time Alex was able to form a primary bond with his foster mother, whom he regards emotionally and psychologically as his mother. The therapist also testified that Alex still requires intensive, constant, vigilant monitoring because, at times, he could become impulsive and dangerous to himself and other children. The therapist stated that Alex has been able to form a bond with Denise, but only because of the security he feels with his foster parents. If Alex's bond with his foster family were severed, his bond with his mother would not survive. Finally, the therapist stated that although she believes Alex enjoyed visiting with his mother, and she would not recommend terminating Denise's parental rights, Denise is not capable of parenting Alex on a full-time basis and would not be able to meet his needs if he were returned to her.

On March 19, 1997, DCYF filed a petition to terminate Denise's parental rights to Alex, pursuant to G.L.1956 § 15–7–7(a)(3). A trial was held in Family Court in March 1998, at which the foregoing evidence was presented. The trial justice granted the petition and issued a written decision on June 10, 1998, in which he found that Alex had been in the legal custody of DCYF for at least twelve months, that there was not a substantial probability that Alex could be returned to his mother's care within a reasonable time, and that Denise was an unfit parent to Alex. The decree was entered on June 23,

for DCYF and by the guardian ad litem. The existence of a potential adoptive family is not a prerequisite to a termination of parental rights. *In re Amanda C.,* 688 A.2d 863, 864 (R.I.1997). The motion for abeyance is hereby denied.

3. It was disclosed at oral argument that Denise's two oldest daughters have recently been returned to her custody.

1998, and a notice of appeal was filed on July 13, 1998.[4]

On appeal, Denise argued that the trial justice improperly found that she was unfit because she had complied with the conditions imposed by DCYF. She contended that the trial justice based his finding of unfitness solely on the fact that Denise would have difficulty caring for Alex. She asserted that this is an inappropriate basis on which to terminate parental rights. DCYF and Alex's guardian ad litem argued that the trial justice properly found that Denise was unfit pursuant to § 15–7–7(a)(3).

■ When this Court reviews a Family Court judgment terminating parental rights, we "examine the record to determine whether the findings of the trial justice are supported by legal and competent evidence." *In re Antonio G.*, 657 A.2d 1052, 1057 (R.I.1995). The trial justice's findings are entitled to great weight and will not be disturbed unless the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence. *Id.* In all cases involving the termination of parental rights, a finding of parental unfitness is necessary. *Id.* (citing *In re Kristina L.*, 520 A.2d 574, 580 (R.I. 1987)). Due process requires that before the state may terminate parental rights, it must "support its allegations by at least clear and convincing evidence." *In re Antonio G.*, 657 A.2d at 1057 (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599, 603 (1982)).

■ Pursuant to § 15–7–7(a)(3), parental rights may be terminated if

"[t]he child has been placed in the legal custody or care of [DCYF] for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided further that

there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home."

There is no dispute that Alex was in the legal custody or care of DCYF for twelve months before the petition for termination of parental rights. Furthermore, Denise acknowledged that she would not be able to care for Alex because he required intensive attention and supervision. It is also clear that Denise was offered services to correct the situation that led to Alex's being removed from her care. The only point of dispute is whether the trial justice properly made the required finding that Denise was unfit. This case is different from the overwhelming majority of termination of parental rights cases, in which the parents are unwilling or unable to resolve the problems that caused them to neglect, abandon, or abuse their children. *See, e.g., In re Kelly S.*, 715 A.2d 1283, 1288–89 (R.I.1998) (father failed to follow through with treatment for paranoid schizophrenia, mother failed to accept responsibility for her conduct that contributed to abuse of children); *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989) (the parents refused to attend meetings of an organization involved in group therapy for sexual abuse victims and parents who sexually abuse children). In this case, we are confronted with a parent who was able, after some false starts, to overcome her substance abuse problems and solve the other problems that led her to neglect her children. Despite these circumstances, we conclude that the trial justice was not clearly wrong in finding that Denise was an unfit parent insofar as Alex is concerned.

■ Denise argued that the trial justice found her to be unfit primarily be-

---

4. On April 14, 2000, this Court granted Denise's motion to remand the papers of the case to Family Court so that the parties could attempt to enter into an open adoption agree-

ment. However, no such agreement was entered into by the time of scheduled argument on May 8, 2000.

cause Alex's foster parents are better able to care for him than she is. As she pointed out, a termination of parental rights based on such reasoning would violate the clear rule of *In re Kristina L.*, 520 A.2d at 582, in which we held that "the natural parents' right to bear and raise their child in a less than perfect way remains superior to the rights of foster parents who may be exemplary nurturers." It is our opinion, however, that the case at bar easily can be distinguished from *In re Kristina L.* As we also noted in that case, the state's interference in parental rights is justified when the child "is likely to suffer physical and/or emotional harm." *Id.* at 580 (quoting *In re Lester*, 417 A.2d 877, 880 (R.I. 1980)). There was clear and convincing evidence before the trial justice that if Alex was not provided with intense and constant supervision, he would become a danger to himself and to other children. There was also clear and convincing evidence that Denise would not be able to provide the supervision required by Alex. Further, there was evidence that a lack of permanency was a strong contributing factor in Alex's psychological difficulties. Therefore, the trial justice was not clearly wrong in determining that if he did not terminate Denise's parental rights, Alex would likely suffer physical or emotional harm.

██ Denise also argued that if her parental rights are terminated in this case, "it would mean that in any situation in

which, due to the presence of other children in the home, a perfectly fit parent cannot provide sufficient attention to a special needs child, that parent will lose all legal rights to the child." We believe that this dire prediction overstates the facts of this case. Although we acknowledge the efforts that Denise made to overcome her difficulties and to regain custody of her four daughters, we are constrained to observe that Alex's serious psychological problems were caused by Denise's own neglect and abandonment of the boy when he was two years old and for several years thereafter. In a situation in which a parent's own misconduct may cause a child to develop special needs and those special needs then make it impossible for the parent to safely care for that child, it is appropriate to conclude that the parent is unfit, as did the trial justice in this case with whose finding we agree. Here, the trial justice's finding that Denise was unfit was supported by legally competent evidence.

In conclusion, therefore, we deny and dismiss the appeal and affirm the decree of the Family Court, to which the papers of the case may be remanded.