**CENTRE LIME AND STONE CO., INC., Appellant,**

v.

**SPRING TOWNSHIP BOARD OF SUPERVISORS.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2001.

Decided Nov. 16, 2001.

■■■■■■■■■■■■■■■

Ronald M. Lucas, Harrisburg, for appellant.

John R. Miller, Bellefonte, for appellee.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Centre Lime and Stone Co., Inc. (Appellant) appeals from the January 5, 2001 order of the Court of Common Pleas of Centre County (trial court), which affirmed the December 1, 1999 decision of the Spring Township Board of Supervisors (Board) to dismiss Appellant's challenge to the validity of the Spring Township Zoning Ordinance (Ordinance) and deny Appellant's Application for Curative Amendment (Application). We affirm.

Appellant is the owner of a tract of land containing 72.99 acres located near the top of Nittany Mountain. The property is in an area zoned as the Forest District pursuant to the Ordinance. The Ordinance permits underground mining in the Forest District, but it prohibits surface mining and quarrying in the Forest District. Surface mining and quarrying are permitted only in the Industrial (I-1) District. (Findings of Fact, Nos. 7, 14-16.)

On September 22, 1995, Appellant filed its Application with the Board. The Application proposed an overlay district of 51.73 acres for a sandstone quarry located 1.4 to 1.6 miles southeast of the village of Pleasant Gap and 6.8 miles east of the nose of Nittany Mountain. The quarry itself would cover 21.2 acres, and the remainder of the land would be used for a haul road, water ponds, pumping and other activities supporting the surface mining operation. (Findings of Fact, Nos. 5, 8-9, 12.)

The proposed overlay district contains a substantial reserve of Skid Resistant Level-Excellent (SRL-E) stone, which the Department of Transportation uses for skid resistance on state roads. Appellant plans to initially produce 50,000 tons of sandstone, netting 25,000 tons of SRL-E material, and to eventually produce 100,000 tons of sandstone, netting 50,000 tons of SRL-E material. The quarry operations would lower the ridgeline of Nittany Mountain by seventy feet. (Findings of Fact, Nos. 10, 12-13, 31, 47.)

On August 30, 1996, Appellant filed a Revised Curative Amendment, which would allow crushing and screening operations, allow a conveyor system, decrease the buffer zone from fifty feet to twenty-five feet, regulate blasting in accordance with state regulations and reduce the overburden. These revisions would increase the

size of the mining operation from 21.2 acres to 25.3 acres. (Findings of Fact, No. 11.)

■ The Board held forty hearings on the Application from November 1995 to October 20, 1999.[1] After considering the evidence presented, the Board made findings of fact and concluded, *inter alia,* that: (1) under *Stabler Development Company v. Board of Supervisors of Lower Mt. Bethel Township,* 695 A.2d 882 (Pa.Cmwlth. 1997), *appeal denied,* 553 Pa. 701, 718 A.2d 787 (1998), the exclusion of quarrying from the Forest District does not result in an unconstitutional "taking" of Appellant's subsurface mineral estate; (2) the Ordinance does not result in a *de jure* exclusion of quarrying because the Ordinance permits quarrying in the township's I-1 district; and (3) the Ordinance does not result in a *de facto* exclusion of quarrying because the Ordinance does not violate the "fair share" doctrine. The Board dismissed Appellant's validity challenge, and Appellant filed an appeal with the trial court. The trial court affirmed the Board's decision, and Appellant now appeals to this court.[2]

## I. Unconstitutional "Taking"

■ Appellant argues that the Board erred in concluding that the exclusion of surface mining and quarrying from the Forest District does not result in an unconstitutional "taking" of Appellant's subsurface mineral estate. We disagree.

■ If the effect of a zoning law is to deprive property owners of the lawful use of their property, it amounts to a "taking" for which the owners must be justly compensated. *Stabler Development Company.* However, because all zoning involves a "taking" in the sense that landowners are not completely free to use their property as they choose, such a "taking" does not entitle the landowners to relief unless the owners' rights have been unreasonably restricted. *Id.*

> Reasonable restrictions are valid exercises of the police power and not unconstitutional takings under the power of eminent domain. Restrictions are not *per se* unreasonable simply because they limit the extraction of minerals.... [A] municipality can create a use zone excluding surface mining altogether....

> The valid exercise of the zoning power is predicated upon its exercise for a legitimate public purpose. Accordingly, zoning ordinances must be enacted for the health, safety or general welfare of the community and their provisions .... must advance those purposes ..... In applying this test to the review of zoning ordinances this court has in some cases held that an appellant must prove the challenged ordinance bears no substantial relationship to the health, safety, morals or general welfare of the community..... Alternatively, this Court has subjected other zoning ordinances to a

---

1. Ten township residents and one non-resident were admitted as parties. The non-resident owns approximately ninety percent of the Nittany Noll Preserve, a 561-acre property bordering the proposed quarry. (Findings of Fact, Nos. 3-4, 6.)

2. In a land use appeal, where a full and complete record was made before the Board and the trial court took no additional evidence, our scope of review is limited to determining whether the Board committed a mani-

fest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). The Board abuses its discretion if its findings are not supported by substantial evidence. *McClimans v. Board of Supervisors of Shenango Township,* 107 Pa.Cmwlth. 542, 529 A.2d 562 (1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

somewhat less stringent standard of scrutiny holding that before a court may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare ..... Regardless of which standard of scrutiny we employ the zoning ordinance is normally presumed valid and the burden of proving otherwise is on the challenging party.

*Id.* at 885 (quoting *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 88–89, 451 A.2d 1002, 1006 (1982)).

### A. Health, Safety or General Welfare

Here, the Board found that the surface mining proposed by Appellant would entail the use of explosives, the operation of heavy trucks and the operation of other

---

3. Several residents were concerned about the health effects of the surface mining. Two residents testified that family members have asthma, which would be exacerbated by the increased dust. (R.R. at 77a-78a, 95a.) Another resident testified that sandstone is a silica product, which can cause disease. (R.R. at 112a.)

4. The Board found that the proposed surface mining would adversely affect the ridgeline of Nittany Mountain, which the township has sought to preserve as a hallmark of the community. (Findings of Fact, Nos. 55, 58, 69-70.)

5. In its brief, Appellant argues that these findings are not supported by substantial evidence. (Appellant's brief, Appendix C.) Although Appellant acknowledges that some of the findings are supported by the testimony of township residents, Appellant maintains that such testimony is mere speculation. (Appellant's brief, App. 16-17.) We disagree. It is clear that the township residents have based their testimony about quarries on their personal experience with the township's existing quarries, which they describe in great detail.

Although Appellant acknowledges that some of the findings are supported by the expert testimony of David S. Barr, a Certified

---

equipment. It would increase dust, noise, air pollution, truck traffic and damage to homes from blasting. Moreover, it would have other negative effects on the quality of life in the community,[3] including an adverse effect on the aesthetics of the community [4] and a further diminution of property values. (Findings of Fact, Nos. 67-68, 70-73.[5])

Because the Ordinance's exclusion of quarrying from the Forest District is substantially related to the health, safety and general welfare of the community, there is no unconstitutional "taking" here.

### B. Mineral Estate in SRL-E Stone

■ Appellant next argues that this court should recognize a separate mineral estate for SRL-E stone in the context of land use regulation, as this court has done for coal.[6] In making this argument, Appel-

---

Property Assessor, Appellant contends that its expert contradicted Barr's testimony. (Appellant's brief, App. 18-19.) However, as the fact finder, it is the role of the Board to resolve conflicts in the evidence, and, in our appellate role, we are bound by the Board's credibility determinations. *See Polay v. Board of Supervisors of West Vincent Township,* 752 A.2d 434 (Pa.Cmwlth.), *appeal denied,* —— Pa. ——, —— A.2d —— (No. 515 M.D. Alloc. Dkt. 2000, filed November 16, 2000).

Finally, Appellant claims that the Board's citations to the record are inadequate. (Appellant's brief, App. 16-19.) However, Appellant cites no rule of law, and we know of none, that states a Board finding is invalid because the Board's citation to the record is erroneous or incomplete. If some portion of the record supports a Board finding, even though not cited, the finding will be upheld.

6. If we were to do so, the test for determining whether the Ordinance results in an unconstitutional "taking" would be different. Instead of examining whether the exclusion of quarrying from the Forest District is related to the public health, safety, morals and general welfare, we would examine whether the Ordinance unreasonably restricts, or conclusively prevents, access to the SRL-E mineral estate. *See Stabler Development Company.*

lant realizes that, in *Stabler Development Company*, we held that Pennsylvania does not recognize a separate non-coal mineral estate in the context of land use regulation. Thus, in effect, Appellant would have this court overrule or limit the holding in *Stabler Development Company*. We decline to do so.

■ Appellant cites numerous cases in support of the proposition that Pennsylvania recognizes a separate mineral estate. (*See* Appellant's brief at 17-28.) However, none of those cases pertain to land use regulation; thus, none of those cases compel us to overrule or limit our holding in *Stabler Development Company*.[7]

In affirming our holding in *Stabler Development Company*, we point out that Pennsylvania is unique among other states in its long recognition of a separate mineral estate in coal. *See Machipongo Land & Coal Company, Inc. v. Department of Environmental Resources*, 719 A.2d 19 (Pa. Cmwlth.1998). We note that, in 1886, before the enactment of modern environmental laws, the Pennsylvania Supreme Court held that the pollution of a stream by coal mining was a trifling inconvenience that "must yield to the necessities of a great public industry [the coal industry]." *Pennsylvania Coal Company v. Sanderson*, 113 Pa. 126, 149, 6 A. 453, 459 (1886). Nearly fifty years later, the Pennsylvania Superior Court, although ruling against the coal industry and in favor of hydro-electric power, still acknowledged the great "interest of the [C]ommonwealth in the promotion and encouragement of the .... coal industry. ...." *Pennsylvania Power*

& *Light Co. v. Public Service Comm.*, 112 Pa.Super. 500, 171 A. 412 (1934).

Now, of course, the coal industry is highly regulated to protect various public interests, including the environment. Yet, like the courts, Pennsylvania's policymakers recognize the importance of the coal industry to the Commonwealth. Thus, for example, in 1984, the Pennsylvania General Assembly enacted public utility legislation specifically designed to promote the coal industry. *See Diamond Energy, Inc. v. Pennsylvania Public Utility Commission*, 653 A.2d 1360 (Pa.Cmwlth.1995). Indeed, section 519 of the Public Utility Code specifically states that public utilities planning to construct electric generating units fueled by oil or natural gas must consider the reasonable availability and cost of comparable units fueled by coal. 66 Pa. C.S. § 519.

To conclude, SRL-E stone simply does not enjoy the same status as coal in this Commonwealth. Therefore, we decline to create a separate mineral estate for SRL-E stone in the context of land use regulation, as we have done for coal.

### II. Exclusionary Zoning

■ Appellant next argues that the Board erred in concluding that the Ordinance's exclusion of surface mining and quarrying from the Forest District does not result in a *de jure* or a *de facto* total exclusion of surface mining and quarrying from the township. We disagree.

■ In challenging the validity of a zoning ordinance, a landowner may pres-

---

**7.** We readily agree with Appellant that Pennsylvania recognizes (1) a coal/mineral estate, (2) a surface estate and (3) the right to support. *Machipongo Land and Coal Company, Inc. v. Department of Environmental Resources, 719 A.2d 19 (Pa.Cmwlth.1998).* We also agree that one person may own the mineral estate, another the surface estate and a

third the right to support. *See Commonwealth v. Fitzmartin*, 376 Pa. 390, 102 A.2d 893 (1954). Nevertheless, in Pennsylvania, a local community may constitutionally restrict access to a non-coal mineral estate if doing so is substantially related to the health, safety and general welfare of the community.

ent a *de jure* or a *de facto* challenge. *Polay v. Board of Supervisors of West Vincent Township,* 752 A.2d 434 (Pa.Cmwlth.), *appeal denied,* —— Pa. ——, —— A.2d —— (No. 515 M.D. Alloc. Dkt. 2000, filed November 16, 2000). In a *de jure* challenge, the landowner alleges that the ordinance totally excludes a proposed use. *Id.* This is in contrast to a *de facto* challenge, where the landowner alleges that the ordinance on its face permits the proposed use, but does so under such conditions that the use cannot in fact be accomplished. *Id.* The proposed use in this case, as set forth in Appellant's Application to the Board, is the "[m]ining and quarrying of minerals, earth and rock." (*See* R.R. (Vol.II) at 895a.)

## A. *De Jure*

Here, the Ordinance specifically permits mining and quarrying in the township's I-1 zoning district. (Findings of Fact, No. 16; R.R. (Vol.II) at 893a.) Therefore, the Ordinance does not totally exclude the proposed land use from the township.[8]

## B. *De Facto*

■ To determine whether the Ordinance results in a *de facto* exclusion of surface mining and quarrying, we conduct a "fair share" analysis. *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985). Such an analysis requires us to determine whether the Ordinance reflects a balanced and weighted consideration of the many factors that bear upon local and regional needs

and development. *In re: Harbucks, Inc.,* 126 Pa.Cmwlth. 591, 560 A.2d 851 (1989), *appeal denied,* 527 Pa. 589, 588 A.2d 511 (1990).

■ If the zoning exclusion is partial, as in this case, the percentage of community land available under the ordinance for the proposed use becomes relevant. *Surrick v. Zoning Hearing Board,* 476 Pa. 182, 382 A.2d 105 (1977). This percentage must be considered in light of the total amount of undeveloped land in the community. *Id.* Where the amount of land zoned for the proposed use is disproportionately small in relation to the total amount of undeveloped land in the community, the ordinance will be held to be exclusionary. *Id.*

Here, the Board found that the Ordinance permits surface mining and quarrying in the township's I-1 zoning district. This represents 1,900 acres of land, which is eleven percent of the township's *total* acreage of 17,110 acres of land. (Findings of Fact, Nos. 20-22.[9]) Obviously, the percentage would be even higher if the 1,900 acres were viewed only in relation to the township's *undeveloped* land.[10] Although we do not know that exact figure, it is clear based on our prior case law that the amount of land zoned for the proposed use in this case is *not* disproportionately small in relation to the total amount of undeveloped land in the township. *See Villa, Inc. v. Zoning Hearing Board,* 57 Pa.Cmwlth. 221, 426 A.2d 1209 (1981) (stating that

---

**8.** In its brief, Appellant admits that there are existing limestone quarry operations in the township and that they are large operations when compared with the proposed quarry. (*See* Appellant's brief at 34-35.)

**9.** Appellant does not challenge Findings of Fact No. 20, but Appellant complains that the citations to the record provided by the Board in support of Findings of Fact Nos. 21 and 22 do not actually support the findings. (Appellant's brief, Appendix C.) However, the trial

court properly noted that other portions of the record do support the findings. (*See* Trial court op. at 6; R.R. at 471a-77a.)

**10.** One witness testified that more land is in use for mining and quarrying operations in Spring Township than in any other community in the county, with the exception of Rush Township which is more than five times larger than Spring Township. (Board op. at 22; R.R. at 476a-77a.)

miniscule percentages of 0.6%, 0.9%, 1.14% and 1.16% have been held to be exclusionary but that a percentage of 16.7% is not exclusionary). Therefore, we conclude that the township has provided its "fair share" of quarrying and that the Ordinance is not *de facto* exclusionary.

Accordingly, we affirm.

### ORDER

AND NOW, this 16th day of November, 2001, the order of the Court of Common Pleas of Centre County, dated January 5, 2001, is hereby affirmed.