### In re DIAMOND I.

### No. 2001–181–Appeal.

Supreme Court of Rhode Island.

May 20, 2002.

Kelly Monteiro, Paula Rosin, Providence.

Frank P. Iacono, Jr.; Thomas J. Corrigan, Jr., Providence.

### O R D E R

The respondent, Daniel Ilacqua (father), appeals from a Family Court decree terminating his parental rights to his son, Diamond, who was born on April 12, 1994.[1] After a prebriefing conference, a single justice of this Court ordered the parties to show cause why the issues raised in this appeal should not be summarily decided.

---

1. The mother is not a participant in this appeal. The Family Court terminated her parental rights via a decree entered on September 1, 1999.

Because the parties have not done so, we proceed to decide the appeal at this time.

Beginning in October of 1997, the Department of Children, Youth and Families (DCYF or department) took legal custody, control and care of Diamond. Thereafter, the Family Court formally committed Diamond to DCYF after the father admitted to neglect on October 15, 1998. On June 2, 1999, the department filed a termination of parental rights petition.

After the trial, the trial justice issued a written decision. He reviewed all of the evidence and found that the department had met its burden by clear and convincing evidence. The department, he concluded, proved that the father had abandoned or deserted the child and that the court had previously involuntarily terminated his parental rights to another child. The trial justice found that "the respondent father had no contact or communication with his child from May 11, 1998 until June 1, 1999 and that he made no reasonable effort to contact the Department to request visitation or to be available to case plan for the future of his child." Even during periods when the father was not incarcerated— including the period from May 1998, through December 1998—he failed to contact the child. As a result, the trial justice justifiably found that the father "showed a clear intent to abandon this child."

Also, in finding that the father was unfit because the court had previously terminated his parental rights to another child, the trial justice noted that the father "continues to lack the willingness to stay out of trouble resulting in his periodic incarceration." In the words of the trial justice:

"Father is currently on a 29 year suspended sentence for possession with intent to deliver a controlled substance and has been incarcerated three times for a total of 25 months since the Department took possession of his child.

Additionally father has failed to take advantage of the opportunity to visit regularly with his child during periods where he has been out of jail and for substantial periods when he failed to advise the Department he was back in the ACI. Each of these factors has created a situation that is seriously detrimental to the child who has significant needs of his own. It is improbable that after so many months of a lack of any consistent contact that additional services would result in reunification within a reasonable period of time considering the child's age and need for a permanent home."

The trial justice further found that the department had no obligation to make reasonable efforts with respect to the allegation of abandonment under G.L.1956 § 15-7-7(a)(4) and to the allegation of a previous termination under § 15-7-7(a)(2)(iv). After finding that the father was unfit to parent Diamond, the trial justice concluded that the termination of the father's parental rights was in the best interest of the child.

In his appeal, the father essentially challenges the trial justice's findings that he was unfit because he had abandoned his son. He argues that "the state failed to prove he had abandoned Diamond by clear and convincing evidence." He suggests that it was DCYF who was to blame for his lack of contact with his son, contending that the social workers did absolutely nothing to facilitate reunification.

Section 15-7-7(a)(4) provides for the termination of parental rights when "[t]he parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion." Moreover, the department is not required to make reasonable efforts to reunite parent and

child under an allegation of abandonment. *See* § 15–7–7(b)(1).

When reviewing cases involving the termination of parental rights, this Court examines the record to determine whether there is legally competent evidence to support the trial justice's findings. *In re Alex B.*, 752 A.2d 484, 487 (R.I.2000) (per curiam). The findings of a Family Court justice are entitled to great weight and will not be disturbed on appeal unless clearly wrong, or unless the trial judge overlooked or misconceived material evidence. *Id.*

We are of the opinion that the father's arguments on appeal are unpersuasive and are contrary to the evidence presented. A review of the record reveals that the father abandoned his son by failing to visit or to have any contact, with his son from May 11, 1998 until June 1, 1999. This thirteen-month time span constituted prima facie evidence of abandonment under § 15–7–7(a)(4). Also, contrary to the father's assertions that the department did nothing to facilitate any sort of relationship or reunification with his son, "it is 'the parent, not DCYF, whose children are in the care of an authorized agency [who] is responsible to substantially and repeatedly maintain contact with the children.'" *In re Shaylon J.*, 782 A.2d 1140, 1143 (R.I. 2001) (per curiam) (quoting *In re Devone S.*, 777 A.2d 1268, 1272 (R.I.2001) (per curiam)). The evidence in this case clearly demonstrated that the father did little to establish a relationship with his young son.

The father also argues that the trial justice's finding that there was a valid prior involuntary termination against him and that he lacked the ability and willingness to respond to services was "clearly wrong." The father contends that in light of the department's failure to provide any services to him, there was no evidence to support a finding that he lacked the ability and willingness to respond to services.

Section 15–7–7(a)(2)(iv) provides that the court shall terminate parental rights if:

"the court has previously involuntarily terminated parental rights to another child of the parent and the parent continues to lack the ability or willingness to respond to services which would rehabilitate the parent; and provided, that the court finds it is improbable that an additional period of services would result in reunification within a reasonable period of time considering the child's age and the need for a permanent home."

Contrary to the father's assertions, there is no requirement under this statute that the department engage in reasonable efforts or provide services to effectuate reunification. *See* § 15–7–7(b)(1). The only requirement is that there has been a previous finding that a parent has been proven to be unfit, *In re Micaela C.*, 769 A.2d 600, 604 (R.I.2001) (per curiam), and that "the parent continues to lack the ability or willingness to respond to services which would rehabilitate the parent." Section 15–7–7(a)(iv). Here, it is undisputed that the court previously had deemed the father unfit and had terminated his parental rights involuntarily. Given the father's frequent incarcerations and his failure to keep in contact with DCYF about available rehabilitative services, the trial justice was entitled to find that the father continued to lack the ability or willingness to respond to services which would rehabilitate him. There was no evidence presented that the father's circumstances had changed and that he would be able to care for his son within a reasonable period of time. Indeed, when the father's record of recidivism and the twenty-nine-year suspended sentence hanging over his head are added to this factual mix, the trial justice, we conclude, was not clearly wrong in terminating the father's parental rights.

Based upon the foregoing, we deny the father's appeal and affirm the Family Court decree.